# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2583
No. 99-2586

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| David Novak, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 11, 2000
Filed: June 20, 2000

_____

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Defendant David Novak appeals two separate convictions. In the first case, 99-2583 (Novak I), Novak pleaded guilty to the facts underlying a twelve-count indictment for violating the terms of his supervised release imposed following an earlier bank fraud conviction. Novak conditioned his plea on retaining the right to appeal the

_____

[1]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

ruling of the District Court[2] denying his motion to dismiss all counts. In the second case, 99-2586 (Novak II), Novak appeals his unrelated conviction for bankruptcy fraud. Having reviewed Novak's arguments, and finding no basis for reversal, we affirm both convictions.

I.

We turn first to the background of Novak I. By agreement filed August 8, 1991, Novak pleaded guilty to bank fraud for misrepresenting pledged collateral. In that agreement, Novak acknowledged that the government would seek approximately $63,000 in restitution and that "the final decision as to an order of restitution is entirely up to the Court." 1991 Plea Agreement ¶ 6. Novak further agreed "to waive any appeal of the amount of restitution ordered by the Court." Id. The District Court[3] sentenced Novak to five months' imprisonment followed by two years of supervised release. In addition to imposing the standard conditions of supervised release—including that "the defendant . . . shall submit a truthful and complete written report" to the United States Probation Office (USPO) each month and that "the defendant shall answer truthfully all inquiries by the probation officer"—the District Court also imposed a special condition that Novak "shall not sell cars for himself or others during [the] term of supervised release." Judgment of Jan. 17, 1992, at 3. The District Court ordered Novak to pay $63,000 in restitution (less the amount obtained by the liquidation of certain collateral) "[o]n a payment schedule determined by the [USPO]." Id. at 4. Novak did not appeal this order.

---

[2]The late Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable Robert E. Larson, United States Magistrate Judge for the Western District of Missouri.

[3]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sentenced Novak in the 1991 bank fraud case.

A twelve-count indictment, filed on August 19, 1996, charged Novak with violating the terms of his supervised release in the 1991 bank fraud case.[4]  As noted above, Novak signed a conditional plea agreement acknowledging the facts underlying all twelve counts, namely, that during the period of his supervised release in the bank fraud case (that is, from June 1992 to June 1994), he violated the conditions of his supervised release.  Novak admitted, inter alia, that he "attempted to hide his employment, income and assets from the [USPO] in order to avoid payment of Court-ordered restitution [and] provided false information to the [USPO]."  1997 Plea Agreement at 5, ¶ K.  Novak admitted that he "submitted to the [USPO] monthly supervision reports as well as yearly financial statements . . . which he acknowledged were correct, when in fact defendant well knew that he owned additional motor vehicles, real estate, earned commission income and had additional employment activities which he intentionally did not disclose to the [USPO]."  Id. at 6, ¶ K.  Ultimately, on May 20, 1999, the District Court[5] sentenced Novak to twenty months' imprisonment on each of the twelve counts, the terms to be served concurrently.

---

[4]Count One charged Novak with conspiring to knowingly and fraudulently provide false supervision report information to the USPO in order to conceal his income and assets and to avoid paying restitution, in violation of 18 U.S.C. § 371 (1994).  Counts Two through Six targeted false monthly supervision reports Novak submitted to the USPO in violation of 18 U.S.C. § 1503 (1994); Counts Seven and Eight targeted false financial statements Novak submitted to the USPO in violation of 18 U.S.C. § 401(3) (1994).  Finally, Counts Nine through Twelve charged that Novak had sold cars in violation of the District Court's prohibition against so doing, also in violation of 18 U.S.C. § 401(3).

[5]Following Judge Stevens's death, the Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, sentenced Novak in both Novak I and Novak II.

As noted, Novak's guilty plea was conditioned on preserving his right to appeal the District Court's denial of his motion to dismiss all twelve counts.[6] We review Novak's arguments de novo. See United States v. Smith, 171 F.3d 617, 619 (8th Cir. 1999) (standard of review).

A.

Novak's first point is that the object of the conspiracy in Count One—to provide false information to the USPO in order to conceal assets and avoid restitution, see 1996 Indictment at 3, ¶ 7—is not an illegal act because, he claims, "the underlying order of restitution entered in the [bank fraud] case, so far as it purported to vest authority to establish a [restitution] payment schedule to be determined by the [USPO,] was a nullity." Brief of Appellant in Novak I at 8. In furtherance of his position, Novak points out that several courts outside this Circuit have held that a district court may not delegate the responsibility for establishing a restitution payment schedule to the USPO,[7]

---

[6]In his motion to dismiss, Novak made essentially three arguments, all of which the District Court rejected. It appears, however, that Novak does not appeal one of these points: the District Court's rejection of his contention that the object of the conspiracy—to conceal his income and assets in order to avoid paying court-ordered restitution—was "impossible" because he actually remains liable for the unpaid restitution. In any event, we agree with the District Court that this argument is meritless. Cf. United States v. Whatley, 133 F.3d 601, 605 (8th Cir. 1998) ("There are a number of infirmities in [appellants'] argument, but it is sufficient for present purposes to note that conspiracy is a crime in itself and is punishable whether it succeeds or fails.").

[7]See generally Hyde v. Hawk, No. 99-3016, 1999 WL 1079607, at *2 (10th Cir. Nov. 30, 1999) (unpublished table decision) (collecting cases and observing that "[t]he majority of circuits to have considered the issue have decided that setting a schedule for a prisoner to pay restitution or fines is a core judicial function under [18 U.S.C. § 3663], and that the district court may not delegate to the [Bureau of Prisons] its duty to set the schedule" (footnote omitted)).

as the District Court did in the underlying bank fraud case here. We apparently have not had occasion to reach this issue squarely[8] and we expressly decline to do so now because of a procedural obstacle that prevents us from considering the merits.

As noted above, Novak failed to appeal the restitution order to which he now objects. He therefore is foreclosed from doing so now. See United States v. Evans, 87 F.3d 1009, 1010 (8th Cir. 1996) ("Because [defendant] never appealed from that earlier proceeding, we believe that he waived the issue of any legal infirmity in that sentence."); United States v. Kress, 58 F.3d 370, 373 (8th Cir 1995) ("Where a party could have raised an issue in a prior appeal but did not, a court later hearing the same case need not consider the matter."). Indeed, the District Court was persuaded that "[t]he central factor in this analysis is the fact that defendant never appealed his [bank fraud sentence] to the Eighth Circuit." Report and Recommendation of April 10, 1997, at 5. We agree.

While Novak also might have tested the 1992 Order by explicitly refusing to obey it and subjecting himself to a contempt proceeding, it is beyond cavil that a defendant must attack a court's order through the judicial process, not by self-help

---

[8]A panel of this Circuit recently discussed United States v. Johnson, 48 F.3d 806, 808-09 (4th Cir. 1995) (vacating restitution order where district court delegated determination of amount of restitution and installment payments, and timing of such payments, to probation officer without retaining ultimate authority over decision), with approval in holding that a district court improperly delegated to a probation officer the judicial function of determining whether a defendant would undergo counseling. See United States v. Kent, 209 F.3d 1073, 1078-79 (8th Cir. 2000). Kent and Johnson are both distinguishable from the instant case, however, because in those cases the district court delegated the entire task of determining punishment (or rehabilitation) to the USPO, rather than merely delegating the implementation of the district court's own order, as occurred here.

alone.  This much Novak partially concedes.[9]  If Novak disputed the propriety of any portion of the 1992 order, he should have challenged it through lawful means, not by willfully disregarding it.  "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."  Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 450 (1911).  We see no basis for reversal on this point.

B.

We turn next to Novak's challenge to Counts Two through Six, the charges that he submitted false reports to the USPO in violation of 18 U.S.C. § 1503.[10]  Novak argues that his misconduct, occurring as it did during a term of supervised release, may not be reached by § 1503 because there was no "pending judicial proceeding" when the misconduct occurred.

Novak was charged under § 1503's broadly-worded omnibus clause which provides, in relevant part, that "[w]hoever . . . . corruptly . . . influences, obstructs, or

---

[9]Novak concedes that "there is a requirement of compliance with judicial orders."  Brief of Appellant in Novak I at 12.  He further posits, however, that there is "a concomitant requirement that the nature of the judicial order be examined to determine whether the flouting of such an order will result in contempt to judicial authority."  Id. (citing United States v. Dickinson, 465 F.2d 496 (5th Cir. 1972) (remanding for reconsideration of contempt judgment where defendant violated invalid court order)).  Dickinson is inapposite, however, because it involved an invalid order; Novak's counsel conceded at oral argument that the restitution order and conditions of supervised release imposed here were valid.

[10]Given that Novak was sentenced to twenty months' imprisonment with respect to each of the twelve counts (all running concurrently), even if we found that these particular five counts were improperly brought, there would be little practical impact on Novak's sentence.

impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" shall be punished.  18 U.S.C. § 1503.  As an initial matter, we question whether § 1503 imposes any requirement that there be a "pending judicial proceeding."[11]  While the instant prosecution may be unusual, there is nothing on the face of § 1503 requiring a pending proceeding nor precluding its use in targeting those

---

[11]But cf. United States v. Risken, 788 F.2d 1361, 1368 (8th Cir.) (noting, in comparing 18 U.S.C. § 1503 and § 1512, that "'[a] prerequisite to any violation of section 1503 is the existence of a pending judicial proceeding known to the violator'") (quoting United States v. Vesich, 724 F.2d 451, 454 (5th Cir.1984)), cert. denied, 479 U.S. 923 (1986)).  The authority for this proposition derives from the opinion in Pettibone v. United States, 148 U.S. 197 (1893), where, in interpreting the omnibus clause of the predecessor statute to § 1503 in the context of determining when a proceeding begins, the Supreme Court held that "it must be necessary for the accused to have knowledge or notice or information of the pendency of proceedings in the United States court, or the progress of the administration of justice therein, before he can be found guilty of obstructing, or impeding, or endeavoring to obstruct or impede the same."  148 U.S. at 205.  Since then, the Supreme Court has approved the recognition of certain "metes and bounds on the very broad language of the catchall provision" and has required some "nexus" between the misconduct and the administration of justice.  United States v. Aguilar, 515 U.S. 593, 599, 600 (1995) (holding that "uttering false statements to an investigating agent . . . who might or might not testify before a grand jury" is insufficient to make out violation of § 1503's catchall provision).  According to the "nexus" analysis, "the act must have a relationship in time, causation, or logic with the judicial proceedings."  Id. at 599.  We see an obvious and overwhelming nexus in time, causation, and logic between Novak's willful and repeated violations of the lawful conditions of his supervised release and the sentencing proceeding imposing those conditions in the first place.  Furthermore, we are not persuaded by the pre-Aguilar analysis of our sister circuit in Haili v. United States, 260 F.2d 744, 746 (9th Cir. 1958) (holding that interference with terms of another's probation was not interference with due administration of justice under § 1503; reading omnibus clause of § 1503 narrowly, ejusdem generis, to "relate to conduct designed to interfere with the process of arriving at an appropriate judgment in a pending case and which disturb the ordinary and proper functions of the court"), and its progeny.

who make knowing and fraudulent misrepresentations to the USPO in violation of a court order during a period of supervised release.

Out of an abundance of caution, however, we shall consider whether this case satisfies a "pending judicial proceeding" requirement, assuming, arguendo, the existence of such a requirement.  This question is one of apparent first impression for this Court.  While we have noted that § 1503's application typically begins "after the commencement of formal judicial proceedings," United States v. Werlinger, 894 F.2d 1015, 1016 n.3 (8th Cir.1990), we evidently have not had occasion to consider when a proceeding ends for purposes of § 1503.  In fact, there is relatively little case law addressing this question.  Cf. United States v. Fulbright, 105 F.3d 443, 450 (9th Cir.) (noting that only "a few cases address post-trial conduct"), cert. denied, 520 U.S. 1236 (1997); United States v. Johnson, 605 F.2d 729, 730 (4th Cir. 1979) ("While many cases have determined when a proceeding begins for purposes of [§ 1503], neither counsel nor research has produced any authority as to when one terminates."), cert. denied, 444 U.S. 1020 (1980).  Counsel have cited no cases,[12] nor could we find any, that address our question of whether § 1503 applies to a defendant's knowing and fraudulent misrepresentations to the USPO in violation of the terms of a district court's order governing his supervised release.

Nonetheless, we agree with the District Court that Novak's misconduct occurred while a judicial proceeding was "pending" because the relevant conduct "occurred prior to sentencing and within the time after sentencing for filing a request for reduction of sentence pursuant to Rule 35(b)."[13]  Report and Recommendation at 9; see United

---

[12]Indeed, the government provided this Court with no briefing on § 1503.

[13]This Federal Rule of Criminal Procedure permits the government to make a motion to the district court within one year after sentencing is imposed to reduce a defendant's sentence to reflect his having given subsequent substantial assistance in investigating or prosecuting another person.  See Fed. R. Crim. P. 35(b).

States v. Fernandez, 837 F.2d 1031, 1034 (11th Cir.) (holding that, even if § 1503 requires "a pending judicial proceeding," such requirement was met where misconduct occurred after sentencing but within period to file motion to reduce sentence pursuant to Federal Rule of Criminal Procedure 35(b)), cert. denied, 488 U.S. 838 (1988); Johnson, 605 F.2d at 731 (concluding that criminal action remains pending until "disposition is made of any direct appeal taken by the defendant assigning error that could result in a new trial").

Here, the disputed counts involve conduct occurring from July 1992 to November 1992. See 1996 Indictment (Count Two (July 1, 1992); Count Three (August 2, 1992); Count Four (September 1, 1992); Count Five (October 1, 1992); Count Six (November 1, 1992)). Novak was sentenced in the underlying bank fraud matter on January 17, 1992, with a subsequent order clarifying the judgment filed on October 19, 1993. Accordingly, all of Novak's misconduct took place well within the one-year period contemplated by Rule 35(b) and, thus, safely can be said to have occurred while a judicial proceeding was "pending"—assuming, arguendo, that the omnibus clause of § 1503 actually imposes such a requirement.

## II.

In Novak II, Novak challenges his conviction for bankruptcy fraud, arguing that a constructive amendment to the indictment—or a fatal variance between the indictment and the evidence—and a lack of evidence supporting conviction warrant reversal. We disagree.

## A.

On June 23, 1995, Novak filed a bankruptcy petition in the District of Kansas claiming $483,719.37 in unsecured liabilities and assets of only $11,380, such assets apparently consisting primarily of a claim-exempt 1984 Corvette. Venue later was

transferred to the Western District of Missouri where, on October 24, 1995, Novak's unsecured liabilities were discharged. Given that Novak did not acknowledge non-exempt assets available for distribution, his unsecured creditors received nothing on their claims.

Subsequently, on August 21, 1997, a sixteen-count indictment charged Novak with knowingly making fraudulent misrepresentations in order to hide certain real and personal property from his creditors and from the bankruptcy trustee. Nine of the counts were dismissed on pretrial motions. Following a four-day jury trial, and the denial by the District Court[14] of Novak's motion for judgment of acquittal, Novak was convicted on all of the seven remaining counts (Counts One, Seven, Eight, Nine, Thirteen, Fourteen, and Fifteen). He was sentenced to sixty-three months' imprisonment[15] to be served consecutively to the twenty-month term imposed in Novak I. In addition, Novak was ordered to pay $483,719.37 in restitution and a $350 special assessment.

Of the counts that remained, in Count One, Novak was charged with knowingly and fraudulently making a false statement under penalty of perjury in his bankruptcy petition by failing to disclose certain real and personal property[16] in violation of 18

---

[14]The late Judge Stevens presided at trial. As noted above, Judge Laughrey imposed sentence.

[15]More precisely, Novak was sentenced to sixty months' imprisonment on six of the counts to run concurrently with a sixty-three month term of imprisonment on a seventh count.

[16]In particular, the government alleged that such nondisclosed assets included: a Phoenix, Arizona house; a Leawood, Kansas house; a 1994 Dodge Viper; a 1989 Jaguar; a 1983 Rolls Royce; a 1980 Honda motorcycle; a 1977 Clenet; a 1980 Excalibur; a 1969 Rolls Royce; a 1978 Rolls Royce; and a 1986 Corvette.

U.S.C. § 2 (1994) and 18 U.S.C. § 152 (1994 & Supp. III 1997).[17] Counts Seven, Eight, Nine, and Thirteen charged Novak with knowingly and fraudulently concealing certain of the specific assets named in Count One—the 1983 Rolls Royce (Count Seven); the 1980 Honda motorcycle (Count Eight); the 1977 Clenet (Count Nine); and the 1986 Corvette (Count Thirteen)—from his creditors and the bankruptcy trustee, also in violation of 18 U.S.C. § 2 and § 152.[18] Count Fourteen charged Novak with money laundering to conceal assets from the trustee in relation to a July 1995, post-petition sale of the 1986 Corvette, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (1994).[19] Finally, Count Fifteen charged Novak with conspiring to knowingly and fraudulently falsify documents and records, by backdating the titles of the 1983 Rolls Royce, the 1980 Honda motorcycle, and the 1977 Clenet, in order to hide those assets from the bankruptcy trustee, all in violation of 18 U.S.C. § 152 and 18 U.S.C. § 371 (1994).[20]

---

[17]Although it does not specify a particular subsection of § 152, Count One tracks the language of § 152(3) which makes it a crime for a person, inter alia, to "knowingly and fraudulently make[] a false declaration . . . under penalty of perjury . . . in or in relation to any case under title 11 [the United States Bankruptcy Code]." 18 U.S.C. § 152(3). Count One further charged Novak with aiding and abetting the same. See 18 U.S.C. § 2.

[18]Although they do not specify a particular subsection of § 152, Counts Seven, Eight, Nine, and Thirteen follow the language of § 152(1) which makes it a crime for a person to "knowingly and fraudulently conceal[] . . . in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor." 18 U.S.C. § 152(1).

[19]It is a crime to conduct or attempt to conduct a financial transaction "knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).

[20]It is a crime for "two or more persons [to] conspire . . . to commit any offense against the United States," 18 U.S.C. § 371, such offense in this case being knowingly and fraudulently backdating certain car title records relating to Novak's property and financial affairs for the purpose of hiding assets from the bankruptcy trustee, in

B.

Novak argues that there was a constructive amendment to the indictment or a fatal variance between the indictment and the evidence because the indictment posited a theory of ownership (i.e., that Novak owned the undisclosed assets at the time of bankruptcy) while the evidence adduced at trial purportedly was aimed at showing a series of fraudulent transfers in anticipation of bankruptcy, a theory not charged in the indictment.

Counts One, Seven, Eight, Nine, and Thirteen charged Novak with committing bankruptcy fraud in violation of 18 U.S.C. § 152. While the indictment did not expressly limit its reach to any particular subsection of § 152, as noted above, we think the indictment, fairly read, references § 152(1) and § 152(3). Although he does not specify a statutory subsection, Novak appears to argue that he actually was prosecuted for a violation of § 152(7), which makes it a crime for a person, "in contemplation of a case under title 11 . . . or with intent to defeat the provisions of title 11, [to] knowingly and fraudulently transfer[] or conceal[] any of his property." 18 U.S.C. § 152(7). There is no reference to fraudulent transfer in anticipation of bankruptcy in the indictment.

It is axiomatic that a defendant may not be tried on charges that were not made in the indictment. See Stirone v. United States, 361 U.S. 212, 217 (1960). "A constructive amendment, which is reversible error per se, 'occurs when the essential elements of the offense set forth in the indictment are [altered, either actually or in effect,] by the prosecutor or the court after the grand jury has passed upon them.'" United States v. Emery, 186 F.3d 921, 927 (8th Cir. 1999) (quoting United States v. Begnaud, 783 F.2d 144, 147 n. 4 (8th Cir. 1986)) (alterations restore original Begnaud quotation), cert. denied, 120 S. Ct. 968 (2000). By contrast, "[a] variance between the

violation of 18 U.S.C. § 152.

-12-

indictment and proof at trial requires reversal of a conviction only if the variance actually prejudiced the defendant. The primary consideration in this determination is whether the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial." Begnaud, 783 F.2d at 148 (citation omitted).

Novak appears to argue that the indictment was constructively amended via the admission of evidence that proves the essential elements of an uncharged offense.[21] We must consider whether the admission of certain evidence created a "substantial likelihood" that Novak was convicted of an uncharged offense, namely, fraudulent transfer in anticipation of bankruptcy. United States v. Johnson, 934 F.2d 936, 941 (8th Cir. 1991) (stating that constructive amendment occurs "when the terms of the indictment are altered in effect by either the admission of evidence or the use of jury instructions which modify the essential elements of the offense charged so that a substantial likelihood exists that the defendant was convicted of an offense other than that charged in the indictment"); see United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999) ("A constructive amendment of an indictment occurs when a jury is allowed to convict a defendant of an offense different from or in addition to the offense alleged in the indictment."), cert. denied, 120 S. Ct. 1174 (2000); cf. United States v. Johnson, 713 F.2d 633, 644 (11th Cir. 1983) ("Despite the government's vacillating characterization, the evidence established, the jury was instructed, and the defendants were convicted on the precise charge for which the grand jury indicted them. We therefore reject their claim of a constructive amendment."), cert. denied, 465 U.S. 1081 (1984).

---

[21]Novak also suggests that an essential element of fraudulent transfer was missing, that is, that if he actually had been prosecuted for fraudulent transfer in anticipation of bankruptcy, he could not have been convicted because the relevant transfers would not have been considered to be in anticipation of bankruptcy given that they occurred several years before the petition date.

After a careful review of the record, we agree with the government that this prosecution did not charge, and did not attempt to prove, a fraudulent transfer in anticipation of bankruptcy under § 152(7).[22] The government's theory of indictment—and its theory throughout the trial—was Novak's ownership of the assets in question, not their fraudulent transfer: that Novak actually owned the enumerated assets on the petition date and fraudulently concealed them from the bankruptcy process.

Novak seems to suggest that failure to charge a defendant under § 152(7) precludes the government from presenting evidence of sham transfers that occurred well before the bankruptcy petition was filed, even though such evidence would be offered to prove, under other subsections of § 152, that the defendant actually owned the property when he filed his bankruptcy petition. If Novak were correct, a defendant who engaged in sham transactions some years before bankruptcy, but still retained indicia of ownership of the assets in question, would be excused from disclosing the assets merely because the sham transfers could not be shoe-horned into § 152(7)'s more narrow time frame. We do not believe § 152 requires such an anomalous result. Indeed, § 152 is a broad and inclusive provision, "'attempt[ing] to cover all of the possible methods by which a debtor . . . may attempt to defeat the intent and effect of the bankruptcy law through any type of effort to keep assets from being equitably distributed among creditors.'" United States v. Goodstein, 883 F.2d 1362, 1369 (7th Cir. 1989) (quoting In re May, 12 B.R. 618, 625 (N.D. Fla. 1980)), cert. denied, 494 U.S. 1007 (1990). We will not condone Novak's attempt to use § 152(7) as a shield

_____

[22]We also note that the bankruptcy fraud jury instruction—to which Novak did not object at the instruction conference and to which he does not object now—does not contain the elements of § 152(7), thereby further bolstering our conclusion that there is no substantial likelihood that Novak was convicted under § 152(7).

from inquiries as to whether he actually owned assets for the purposes of § 152(1) and § 152(3).[23]

Having reviewed the record carefully, we are convinced that Novak was tried on the essential elements of the indicted offenses, that he was fully and fairly apprised of the charges facing him at trial, and that the jury was not instructed that it could find Novak guilty of a crime not charged. Accordingly, there was no constructive amendment of or fatal variance from the indictment and we find no basis for reversal on this point.

## C.

Novak next argues that the evidence adduced at trial is insufficient to sustain his conviction as to any count[24] because, he contends, "[t]he Government at no point in the trial of this case established ownership of any of the assets during a time remotely relevant to the bankruptcy petition." Brief of Appellant in Novak II at 20.

---

[23]We are not, of course, suggesting that § 152(7) and its elements are subsumed into § 152(1) and § 152(3). Ours is not the typical § 152(7) case in which a defendant no longer owns the asset on the petition date because he fraudulently transferred that asset in anticipation of bankruptcy. By contrast, Novak was charged with and tried for actually owning the assets on the petition date and concealing that ownership during the bankruptcy process.

[24]While Novak's brief is not entirely clear, when read as a whole, it appears to challenge the sufficiency of proof on Counts One, Seven, Eight, Nine, Fourteen, and Fifteen. Although Novak appears to ignore Count Thirteen (the 1986 Corvette), we note that Novak's ownership of this asset already is at issue in Counts One and Fourteen.

Once the proper legal standards have been set forth by the District Court,[25] the determination of whether the assets in question belonged to Novak (or, more accurately, to his bankruptcy estate) is a factual one for the jury to decide. See United States v. Robbins, 997 F.2d 390, 392-93 (8th Cir.) (setting forth standard and reversing conviction under § 152 where only evidence that assets in question were part of bankruptcy estate was bankruptcy judge's testimony that, as civil matter, he considered them to be), cert. denied, 510 U.S. 948 (1993). "The determination whether a debtor held a legal, equitable, or possessory interest in property at the commencement of the case requires the fact-finder to evaluate all relevant direct and circumstantial evidence relating to the property and to the intent of the debtor." United States v. Grant, 971 F.2d 799, 806 (1st Cir. 1992) (§ 152 context).

We are chary of disturbing a jury's factual determination. See United States v. Christner, 66 F.3d 922, 925 (8th Cir. 1995) (noting standard of review in appeals concerning sufficiency of evidence "'is very strict, and the verdict of the jury should not be overturned lightly'") (quoting United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991)). "We must uphold a jury's verdict if, drawing all reasonable inferences in favor of the verdict, 'there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendants guilty beyond a reasonable doubt.'" United States v. Ervasti, 201 F.3d 1029, 1036 (8th Cir. 2000) (quoting United States v. Vig, 167 F.3d 443, 447 (8th Cir.), cert. denied, 120 S. Ct. 146, 314 (1999)).

We are faced, then, with the question of whether a jury could have found beyond a reasonable doubt that Novak had a legal, equitable, or possessory ownership interest in the following assets listed in the indictment:[26] the 1983 Rolls Royce, the 1980

---

[25]As stated, Novak does not challenge the jury instructions.

[26]Although eleven assets were listed in Count One of the indictment, our task is made considerably easier by the fact that, to convict Novak of Count One, the jury had to agree unanimously that Novak owned only one of the assets there listed. See United

Honda motorcycle, the 1977 Clenet, and the 1986 Corvette. After a careful review of the record, we conclude that a reasonable jury could have so found.[27]

We note, for example, that Cynthia Colyer, Novak's former girlfriend, testified that in April 1996—approximately ten months following the petition date—Novak told her that she "knew good and well that the town house was his and the cars were his and the house in Arizona was his and [she] couldn't possibly be stupid enough to believe otherwise." Tr. at 277. Certainly the jury is entitled to credit this testimony and to draw reasonable inferences from it.

---

States v. Jessee, 605 F.2d 430, 431 (9th Cir. 1979). The jury was so instructed. See Jury Instruction No. 13. Because some of the assets listed in Count One, see n.16, supra, were also the subject of other counts of conviction, see Counts Seven (1983 Rolls Royce), Eight (1980 Honda motorcycle), Nine (1977 Clenet), Thirteen (1986 Corvette), if there is sufficient evidence of ownership to uphold any one of Counts Seven, Eight, Nine, or Thirteen (the other bankruptcy fraud counts), there is also sufficient evidence of ownership to uphold Count One. Likewise, the remaining counts concern Novak's ownership of the same assets. See Count Fourteen (1986 Corvette) and Count Fifteen (1983 Rolls Royce, 1980 Honda Motorcycle, 1977 Clenet). Thus, as a practical matter, we face the ownership question with respect to only four assets: the 1983 Rolls Royce, the 1980 Honda motorcycle, the 1977 Clenet, and the 1986 Corvette.

[27]We feel compelled to note that the government has not simplified our task in evaluating Novak's contention. We have trudged through the trial transcripts and agree with the District Court's assessment that the presentation of evidence by the government was not a model of clarity. See Trial Transcript ("Tr.") at 187 (District Court: "I have never seen a case so illy prepared."). While we are troubled by the government's sloppiness in failing to create a cleaner record in which the time frames and precise items at issue in the testimony are always clear, we nevertheless conclude that there was sufficient evidence from which a reasonable jury could have found that Novak owned the assets at issue.

Testimony at trial also included the following specific evidence. With regard to the 1983 Rolls Royce (Counts One, Seven, and Fifteen), there was testimony that Novak said he owned the car. With regard to the 1980 Motorcycle (Counts One, Eight, and Fifteen), there was testimony that Novak falsified paperwork to show that he had sold the 1980 Honda motorcycle well before the petition date. With respect to the 1977 Clenet (Counts One, Nine, and Fifteen), there was testimony that Novak stored the vehicle at his home and evidence that the vehicle's dashboard plaque read: "Custom built Clenet Roadster for David Novak by Clenet, Pasadena, California." Tr. at 235. There also was testimony that Novak backdated a receipt to indicate that he had sold the Clenet to another buyer well before the petition date. As to the 1986 Corvette (Counts One, Thirteen, and Fourteen), a search of its vehicle registration revealed that Novak had registered it several months before the petition date and there was testimony that Novak sold it a few weeks after the petition date. In sum, then, we conclude that there is sufficient evidence to sustain Novak's conviction on all counts.

Moreover, even if there were not sufficient evidence that Novak owned these assets—a proposition we reject—and even if Novak legitimately may have harbored some doubts about his ownership of these items, a debtor's duty to disclose assets extends to all property that may be found to be property of the bankruptcy estate. "It is a reasonable reading of 18 U.S.C. § 152 to conclude that the statute requires a [debtor] to disclose the existence of assets whose immediate status in bankruptcy is uncertain." United States v. Cherek, 734 F.2d 1248, 1254 (7th Cir. 1984) ("Even if the asset is not ultimately determined to be property of the estate under the technical rules of the Federal Bankruptcy Code, Section 152 properly imposes sanctions on those who preempt a court's determination by failing to report the asset."), cert. denied, 471 U.S. 1014 (1985); accord United States v. Beard, 913 F.2d 193, 197 (5th Cir. 1990) (defendant "was under the duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain" and his failure to do so "constituted a fraud upon the court" under § 152); see generally United States v. Ellis, 50 F.3d 419, 423 (7th Cir.) ("A material omission on a bankruptcy petition impedes a bankruptcy

court's fulfilling of its responsibilities just as much as an explicitly false statement. The bankruptcy courts depend on petitioners to provide truthful and complete information. These courts have the right to expect that the petitions filed will reflect accurately the financial situation of the petitioner. The bankruptcy adjudicatory process simply cannot function properly if petitioners are not honest about their [assets]. 'When honesty is absent, the goals of the civil side of the system become more expensive and more elusive.' 1 *Collier on Bankruptcy* ¶ 7A.01(4)(a)."), <u>cert. denied</u>, 516 U.S. 849 (1995). Novak was obligated to disclose those items that he held out to third parties as his property so that their legal status could be determined by the bankruptcy court. Novak was not faithful to this duty and must face the consequences.[28]

## III.

Having reviewed all of Novak's arguments in both of these appeals, and finding no basis for reversal in either case, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[28]For purposes of this appeal, which as we already have suggested is not a model of clarity, we shall assume that the ownership issues with regard to Counts Fourteen and Fifteen are subsumed in and completely addressed by the preceding discussion.