# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3977

_____

United States of America,        *
                             *

        Appellee,      *

                               *   Appeal from the United States

     v.                *   District Court for the

                               *   District of South Dakota.

Travis Whirlwind Soldier,      *

                               *

        Appellant.     *

_____

Submitted: June 12, 2007
Filed: August 24, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Travis Whirlwind Soldier was found guilty, following a jury trial, of one count of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846. The district court[1] sentenced Whirlwind Soldier to 188 months imprisonment and 3 years supervised release. Whirlwind Soldier now appeals his conviction and sentence. We affirm both the conviction and the sentence.

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

## I.

We review the facts in the light most favorable to the verdict, drawing all reasonable inferences from the evidence that supports the jury's verdict. United States v. Cannon, 475 F.3d 1013, 1016 (8th Cir. 2007).

Following completion of law school at the University of South Dakota, Whirlwind Soldier worked as a public defender for the Rosebud Sioux Tribal Court. According to multiple witnesses, Whirlwind Soldier frequently bought, sold, traded, delivered, and shared methamphetamine and other drugs, in some cases using his position as public defender to persuade others to cooperate with him.

Kaylee Folkers observed her sister trade cocaine to Whirlwind Soldier for methamphetamine and saw her sister's boyfriend trade one ounce of marijuana to Whirlwind Soldier for methamphetamine. Also, Folkers attended a party at which Whirlwind Soldier possessed cocaine.

Joe Buck Colombe testified to numerous interactions with Whirlwind Soldier that involved drug use or distribution. Colombe smoked methamphetamine with Whirlwind Soldier about 20 times, using drugs provided by Whirlwind Soldier. Colombe also observed Whirlwind Soldier give methamphetamine to Chris Night Pipe and Richard Neiss, trade one-half to one ounce of marijuana to Lonnie Erickson in return for one-half gram of methamphetamine, and exchange one-half ounce of marijuana to Melanie Antoine for one-quarter to one-half gram of methamphetamine, which Colombe then smoked with Whirlwind Soldier. Colombe also testified to an occasion where he provided money to Whirlwind Soldier to buy methamphetamine from a third party because that person did not trust Colombe. After Whirlwind Soldier used Colombe's money to buy the drugs, the two smoked the methamphetamine together.

Michael White Buffalo Chief testified that after his arrest on domestic violence charges Whirlwind Soldier offered to get him out of jail in return for White Buffalo Chief's assistance in making deliveries. White Buffalo Chief agreed to make the deliveries in return for Whirlwind Soldier's assistance with his charges. Approximately 30 minutes after White Buffalo Chief was released from custody, Whirlwind Soldier called him back to the courthouse where Whirlwind Soldier gave him a bag containing a blue container with something solid in the container. At Whirlwind Soldier's direction, White Buffalo Chief delivered the package to Clinton Haukaas. Whirlwind Soldier later directed White Buffalo Chief to make a second delivery, this time to Natasha Bordeaux, of three bags of methamphetamine. The third delivery White Buffalo Chief made for Whirlwind Soldier involved a round container which White Buffalo Chief delivered to Colombe. Additionally, White Buffalo Chief delivered one package from Bordeaux to Whirlwind Soldier. White Buffalo Chief believed that the package, which was a brown paper bag wrapped in tape and labeled with Whirlwind Soldier's name, contained "8-balls"[2] of methamphetamine due to the feel of the package and White Buffalo Chief's knowledge of Bordeaux packaging methamphetamine in that manner.

Melanie Antoine testified that, at Whirlwind Soldier's request, she gave him a gram of methamphetamine for his help in obtaining the dismissal of charges pending against her in the Tribal Court. She then entered into a personal relationship with Whirlwind Soldier. Beginning in the spring of 2004, Antoine began trading methamphetamine to Whirlwind Soldier for marijuana. On approximately ten occasions, she traded one gram of methamphetamine for one ounce of marijuana. On approximately 20 other occasions, Antoine sold methamphetamine to Whirlwind Soldier, totaling approximately one ounce of methamphetamine. She also purchased small amounts of methamphetamine from Whirlwind Soldier approximately 20 times.

---

[2]An "8-ball" refers to one-eighth of an ounce, or 3.5 grams, of methamphetamine. See United States v. Campos, 306 F.3d 577, 581 (8th Cir. 2002).

In addition to these transactions, Antoine and Whirlwind Soldier, because of their personal relationship, frequently gave methamphetamine to each other. Antoine testified that she gave Whirlwind Soldier a total of an ounce of methamphetamine and that Whirlwind Soldier gave her a total of an eighth of an ounce of methamphetamine. Antoine testified to seeing Whirlwind Soldier sell methamphetamine to Shawn Shaw and Fay Reifel four to five times and to Shawn Burnette three to four times. Antoine also testified about one occasion where Whirlwind Soldier told her that he, Colombe, and Joe Benge had "chipped in" to purchase methamphetamine from Antoine. Whirlwind Soldier gave Antoine $1,000 for an ounce of methamphetamine, and Whirlwind Soldier told Antoine that he intended to give Colombe and Benge each an eighth of an ounce. Antoine also testified that after selling methamphetamine to Whirlwind Soldier, Whirlwind Soldier sometimes "re-bagg[ed]" the drug into smaller amounts which she testified is a common practice of drug dealers, however she did not know if Whirlwind Soldier resold those amounts or used them himself.

Lonnie Erickson, Melanie Antoine's father, testified that he traded methamphetamine to Whirlwind Soldier in return for marijuana on approximately ten occasions.

Michael Wright testified that he bought methamphetamine from Whirlwind Soldier four or five times, for a total of an ounce, and that in the fall of 2003, he saw Whirlwind Soldier trade 10 ounces of cocaine to John Krempkes for 14 to 15 ounces of methamphetamine.

Wilson Denoyer testified that he purchased one-half gram of methamphetamine from Whirlwind Soldier in July 2004 and another one-half gram of methamphetamine from Whirlwind Soldier in November 2004. He also arranged for Whirlwind Soldier to buy methamphetamine from his nephew, Brandon Denoyer. Jamey Farmer testified that her aunt arranged for her to buy methamphetamine from Whirlwind Soldier. Farmer gave the money to her aunt who, in turn, procured the methamphetamine from

Whirlwind Soldier and gave it to Farmer. Richard Neiss bought three and a half grams of methamphetamine from Whirlwind Soldier over five transactions from August 2005 until October 2005. On eight separate occasions, Whirlwind Soldier fronted one-fourth of an ounce of methamphetamine to Neiss. Neiss used some of these drugs but resold most of it.

At sentencing, the district court adopted the government's findings of the amount of drugs involved in the conspiracy. The drug quantity was calculated by taking the amounts referenced in the Presentence Report (PSR) and deducting the amounts that were not testified to at trial. This amounted to 1,215 kilograms of converted marijuana, giving Whirlwind Soldier a base offense level of 32. The court increased the offense level by two levels because Whirlwind Soldier used his position as a Tribal Public Defender "to accommodate those users of drugs, co-conspirators who attempted to involve themselves in the drug conspiracy of which the jury found the defendant guilty." The court also applied an additional two-level enhancement for obstruction of justice, finding that Whirlwind Soldier perjured himself by testifying at trial that he did not have access to police or prosecutorial files, that he was only a user of drugs and was not a seller, that he was not a member of a drug conspiracy, and that all of the government's witnesses were lying about his involvement. The court denied Whirlwind Soldier's request for a mitigating-role reduction. Thus, with a criminal history category of I and a total offense level of 36, the Guidelines sentencing range was 188 to 235 months. After considering the other factors in 18 U.S.C. § 3553(a) and recognizing that the Guidelines were only advisory, the district court sentenced Whirlwind Soldier to 188 months imprisonment.

On appeal, Whirlwind Soldier challenges his conviction, arguing that there was insufficient evidence to convict him of a conspiracy, a variance between the indictment and the evidence presented at trial, and a constructive amendment of the indictment. He also challenges his sentence, contending that the district court erred in the drug quantity determination, in imposing the two-level obstruction of justice

enhancement, in denying the four-level minimal participant reduction, and in failing to properly apply the section 3553 factors or make an adequate appellate record of the court's application of those factors.

II.

When considering Whirlwind Soldier's claim of insufficient evidence, we review de novo, "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Hamilton, 332 F.3d 1144, 1148 (8th Cir. 2003) (quoting United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003), cert. denied, 540 U.S. 899 (2003)). We will reverse the conviction only where no reasonable jury could have found the accused guilty of the crime charged in the indictment. United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003).

To establish a conspiracy, the government must prove: (1) the existence of an agreement among two or more people to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) that the defendant knowingly joined and participated in the agreement. United States v. Johnson, 439 F.3d 947, 954 (8th Cir. 2006). The agreement may be in the form of a tacit understanding rather than a formal, explicit agreement. Id. "[A] defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc). "[E]vidence of association or acquaintance is a relevant factor but alone is insufficient to establish a conspiracy." United States v. Winston, 456 F.3d 861, 866 (8th Cir. 2006).

Whirlwind Soldier argues that the government failed to prove any of the necessary elements of a conspiracy because (1) there was no proof that he had reached an agreement with another to distribute methamphetamine, (2) proof that he had used

-6-

his position as a public defender to obtain drugs for personal use did not, in itself, prove an agreement to distribute, (3) there was a lack of the physical evidence that would normally be present in a drug conspiracy case such as customer lists, scales, and packaging, (4) none of the government's witnesses acknowledged that they were involved in a conspiracy, and (5) the government's case rested upon the testimony of convicted felons or indicted defendants who were testifying in the hopes of leniency or whose credibility was otherwise questionable.

The testimony presented at trial showed that Whirlwind Soldier was involved in more than a simple buyer-seller relationship with some of the witnesses. First, his contention that he was merely obtaining the methamphetamine for personal use is belied by the testimonies of several witnesses that they purchased methamphetamine from Whirlwind Soldier or saw him sell to others. Second, the testimonies of Colombe, White Buffalo Chief, Antoine, Wilson Denoyer, and Farmer described specific incidents where Whirlwind Soldier reached agreements to distribute methamphetamine which included Whirlwind Soldier serving as a "strawman" between a seller and a buyer, having the drugs delivered by a third party, agreeing to combine funds with others to purchase methamphetamine, arranging for additional suppliers through a third party, and selling the drugs through a "strawman" agreement. The testimony of these witnesses is sufficient for a reasonable juror to conclude that Whirlwind Soldier had reached agreements to participate in the distribution of methamphetamine.

With regard to Whirlwind Soldier's contention that the government's witnesses were not credible, we note that witness credibility is a matter for the jury to decide, and "we are obliged to defer to the jury's determination." United States v. Lopez, 443 F.3d 1026, 1031 (8th Cir. 2006). Moreover, a conspiracy conviction may be based on indirect or circumstantial evidence, including solely testimony from co-conspirators. See United States v. Osuna-Zepeda, 416 F.3d 838, 840-42 (8th Cir. 2005).

Accordingly, the government presented evidence that was sufficient to support the jury's verdict.

Whirlwind Soldier also contends that there was a variance between the indictment and the evidence presented at trial or alternatively, that there was a constructive amendment of the indictment based on the evidence submitted concerning his role as a tribal public defender. He argues that the government's theory of the case, that Whirlwind Soldier offered assistance with criminal charges in return for methamphetamine, failed to provide fair notice that his work as a public defender would form the basis of the charges against him. Further, he claims the evidence presented at trial resulted in his conviction for misuse of a public office, not conspiracy to distribute methamphetamine.

We have previously discussed the differences between a variance in the evidence and a constructive amendment to the indictment. See United States v. Novak, 217 F.3d 566, 574-75 (8th Cir. 2000); United States v. Emery, 186 F.3d 921, 927-28 (8th Cir. 1999). "A variance arises when the evidence presented proves facts that are 'materially different' from those [alleged] in the indictment." United States v. Harris, 344 F.3d 803, 805 (8th Cir. 2003) (quoting United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986)). With regards to a variance, "[t]he charging document does not change, only the evidence against which the defendant expected to defend" varies, thus the court reviews the variance to determine if defendant's right to notice has been prejudiced, and absent such prejudice, the variance is harmless error. United States v. Stuckey, 220 F.3d 976, 981 (8th Cir. 2000) (quoting U.S. Const. amend. VI).

A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner–often through the evidence presented at trial or the jury instructions–that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the

indictment. See Emery, 186 F.3d at 927. With a constructive amendment, "the Fifth Amendment right not to 'be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury'" is implicated, and thus a constructive amendment of an indictment is reversible error per se. See Stuckey, 220 F.3d at 981 (quoting U.S. Const. amend. V). In reviewing an appeal based on a claim of constructive amendment, we consider whether the admission of evidence or the jury instructions created a "substantial likelihood" that the defendant was convicted of an uncharged offense. See Novak, 217 F.3d at 575.

The indictment in this case charged that between October 1, 2003, and August 18, 2005, Whirlwind Soldier conspired with others to distribute or possess with intent to distribute a substance containing methamphetamine. While there was evidence presented at trial that Whirlwind Soldier obtained some of the methamphetamine in exchange for assistance with Tribal Court charges, that evidence is not "materially different" from the allegations of the indictment and the indictment "fully and fairly apprised" Whirlwind Soldier of the charge he faced at trial. Begnaud, 783 F.2d at 148 (To determine if a prejudicial variance has occurred, "[t]he primary consideration is whether the indictment fully and fairly apprised the defendant of the charge he or she must meet at trial."). Further, Whirlwind Soldier cannot now claim that he was unaware that the government would present evidence of his position as a public defender in view of the fact that he filed a motion in limine seeking to prevent the presentation of this evidence at trial. See United States v. Cain, 487 F.3d 1108, 1113-14 (8th Cir. 2007) (rejecting challenge to conviction on variance argument where defendant had notice of evidence to be adduced at trial).

Alternatively, Whirlwind Soldier argues that a variance is present here because the evidence established multiple conspiracies while he was charged only with a single conspiracy. This contention is without merit. Determining whether the evidence presented at trial established a single conspiracy or multiple conspiracies is a factual question reviewed for clear error. United States v. Benford, 360 F.3d 913,

914 (8th Cir. 2004). "In determining whether a variance exists, we consider the totality of the circumstances, including the nature of the activities, the location and time frame in which the activities were performed, and the participants involved." United States v. Morales, 113 F.3d 116, 119 (8th Cir. 1997). Here, the evidence, viewed in the light most favorable to the verdict, shows that one conspiracy existed. The participants were all connected to the Rosebud Sioux Tribal area in South Dakota, the drugs were distributed over a two year period, and the predominant drug distributed was methamphetamine. Thus, the district court did not clearly err in denying Whirlwind Soldier's motion to acquit on this issue. See United States v. Lopez-Arce, 267 F.3d 775, 781-82 (8th Cir. 2001) (affirming conviction on single conspiracy where evidence showed common goal of selling cocaine and methamphetamine, common metropolitan location for distribution, continuous period of time, and familiarity among coconspirators).

Regarding his claim that the indictment was constructively amended, Whirlwind Soldier asserts that he "was convicted of improper use of his office by a public official" because the evidence presented by the government established that he had "misused his office by offering services or information accessible to him by virtue of his office in return for personal use amounts of methamphetamine." However, the jury was instructed that Whirlwind Soldier was charged "with one crime" which was "the crime of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance," the elements of the charge were given to the jury, the requirements of a conspiracy were explained, and, as we have explained, the evidence presented amply supports the charge. Accordingly, there is nothing in the record that would suggest a substantial likelihood that the jury actually returned a verdict on a misuse of public office charge. Cf. United States v. Johnson, 713 F.2d 633, 644 (11th Cir. 1983) (No constructive amendment was present where "the evidence established, the jury was instructed, and the defendants were convicted on the precise charge for which the grand jury indicted them.").

We conclude that Whirlwind Soldier "was tried on the essential elements of the indicted offense[],that he was fully and fairly apprised of the charge[] facing him at trial, and that the jury was not instructed that it could find [Whirlwind Soldier] guilty of a crime not charged." Novak, 217 F.3d at 576. We therefore find no fatal variance or constructive amendment.

III.

Whirlwind Soldier also challenges his 188-month sentence, claiming that the district court erred in: (1) the drug quantity determination, (2) imposing a two-level enhancement for obstruction of justice, (3) failing to grant him a four-level decrease for being a minimal participant, and (4) not properly considering and applying the section 3553(a) factors.

We review for clear error the district court's findings of fact about the drug quantity attributable to the defendant, the defendant's role in the offense, and whether the defendant obstructed justice by committing perjury. See United States v. Mickelson, 378 F.3d 810, 821 (8th Cir. 2004) (drug quantity standard of review); United States v. Salvador, 426 F.3d 989, 993 (8th Cir. 2005) (role in offense standard of review); United States v. Thundershield, 474 F.3d 503, 507 (8th Cir. 2007) (obstruction of justice standard of review).

The calculation of drug quantity is important as that calculation determines the base offense level under the Sentencing Guidelines for drug convictions. "The government bears the burden of proving drug quantity by a preponderance of the evidence." United States v. Marshall, 411 F.3d 891, 894 (8th Cir. 2005). "When calculating drug quantity in the context of a narcotics trafficking conspiracy, the sentencing court may consider all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." United States v. Plancarte-Vazquez, 450 F.3d 848, 852 (8th Cir. 2006).

Here, the PSR's initial drug quantity calculation included drug quantities that had been either testified to at trial or included in a law enforcement report. A supplemental report was prepared which compared the amounts set forth in the PSR with the trial testimony. The government also presented a chart[3] which similarly compares the amounts enumerated in the PSR with the amounts testified to at trial and calculates the amount of drugs testified to at trial, after conversion to marijuana, to be 1,215 kilograms. The district court adopted the government's drug quantity calculation, noting that it had "sat on the trial of this case, and heard all the testimony concerning the amount of drugs." After reviewing the trial transcript, including the references to drug quantities, and comparing the testimony to the PSR and the government's chart, we cannot find that the district court clearly erred in finding a drug quantity that established a base offense level of 32.[4] See United States Sentencing Commission, Guidelines Manual, § 2D1.1(c)(4) (base offense level of 32 for at least 1000 kilograms but less than 3000 kilograms of marijuana).

The district court imposed a two-level enhancement for obstruction of justice based on Whirlwind Soldier's testimony at trial. Under section 3C1.1 of the Sentencing Guidelines, a two-level increase in the offense level is appropriate:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstruction conduct related to (i) the defendant's

[3]The government has moved to expand the appellate record to include this chart which was introduced before the sentencing court but was never received by the court. At oral argument, defense counsel stated that there were no objections to the motion. Therefore, the motion is granted and the record is expanded to included the drug quantity chart presented to the sentencing court by the government.

[4]We note that the government concedes a calculation error occurred in the conversion, however this error would not change Whirlwind Soldier's base offense level.

offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

See U.S.S.G. § 3C1.1. This enhancement may be supported if the district court finds that the defendant gave false testimony on a material matter with the intent to provide false testimony. See Thundershield, 474 F.3d at 507. In other words, it is not sufficient that the defendant testifies on his own behalf and the jury simply disbelieves his testimony, rather the false testimony must be intentional and relate to a material matter. Id.

Here, the district court found that Whirlwind Soldier had purposefully perjured himself when he testified that, among other things, he did not have access to police or prosecutorial files, that he was only a user and not a seller of drugs, and that all of the government's witnesses were lying in their trial testimony. These matters were material to the drug distribution conspiracy charge. Accordingly, we reject Whirlwind Soldier's claim that the district court clearly erred in applying the two-level enhancement for obstruction of justice.

Whirlwind Soldier contends that the district court should have granted him a four-level decrease because he had a minimal role in the conspiracy. "Whether a defendant qualifies for a role reduction is a question of fact. . . . [which] is measured by the relevant conduct for which he is held responsible." United States v. Carasa-Vargas, 420 F.3d 733, 737 (8th Cir. 2005) (citing United States v. Surratt, 172 F.3d 559, 567 (8th Cir. 1999) and United States v. McCarthy, 97 F.3d 1562, 1574 (8th Cir. 1996)). The burden is on the defendant to prove that the reduction applies. Id. (citing United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995)).

The evidence presented at trial does not support a minimal role in the offense reduction. Whirlwind Soldier was an active and frequent seller of methamphetamine and was responsible for coordinating the transportation and distribution of drugs by

others.  Under these facts, he is not entitled to the reduction.  See U.S.S.G. § 3B1.2, cmt. 4 ("It is intended that the downward adjustment for a minimal participant will be used infrequently."); United States v. Boksan, 293 F.3d 1056, 1058 (8th Cir. 2002) (role reduction for minimal participant should be reserved for cases where defendant does not know or understand scope of illegal enterprise or where defendant's involvement was insignificant).

Finally, Whirlwind Soldier challenges the district court's application of the section 3553(a) factors.  Specifically, he argues that, although the district court stated that it had considered those factors, had the court actually done so, it would have imposed a sentence far below Whirlwind Soldier's 188 month sentence.  Section 3553(a) lists certain factors that the district court must consider when determining the appropriate criminal sentence.  United States v. Mosqueda-Estevez, 485 F.3d 1009, 1012 (8th Cir. 2007).  Our review of the ultimate sentence, including the district court's application of the section 3553(a) factors, is for reasonableness, which is presumed on appeal when the sentence falls within a properly calculated Guidelines range.  Rita v. United States, 127 S. Ct. 2456, 2461-68 (2007) (on appeal, court may presume reasonableness of sentence that reflects proper application of Guidelines); United States v. Boothe, No. 06-3131, 2007 WL 1827502  (8th Cir. June 27, 2007).  After the district court noted that it had "examined all the factors in . . . Section 3553(a)," the court discussed the impact Whirlwind Soldier could have made within his community on the Rosebud Reservation and the grief the court experienced in having to impose the sentence on a "young, talented Indian person."  The district court need not "categorically rehearse" each of the factors, see United States v. Dieken, 432 F.3d 906, 909 (8th Cir.), cert. denied, 127 S. Ct. 163 (2006), and where the court has before it the information relevant to the factors, we presume the factors are considered when the court determines the sentence. See Rita, 127 S. Ct. at 2469 (where record is clear that judge listened to the argument and considered supporting evidence, law does not require judge to explain more extensively the reasons for imposing a sentence within Guidelines range).  Thus, we find that the district court did not abuse its

discretion by  imposing a sentence at the bottom of a properly calculated Guidelines range.

V.

Accordingly, we affirm Whirlwind Soldier's conviction and sentence.

_____