# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1765

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Jesus Ixta-Salazar, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: February 12, 2010
Filed: February 18, 2010

_____

Before WOLLMAN, BYE, and MELLOY,  Circuit Judges.

_____

PER CURIAM.

Jesus Ixta-Salazar was found guilty following a jury trial of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841and 846, and being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5)(a). The district court[1] sentenced Ixta-Salazar to 235 months' imprisonment followed by five years of supervised release.  Ixta-Salazar appeals, contending the district court erred in denying his request for judgment of acquittal.  Ixta-Salazar also argues the district court's sentence constitutes cruel and unusual punishment.  We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

In May 2008, Ixta-Salazar was pulled over by police in Bellevue, Nebraska. Officers discovered a loaded .45 caliber firearm during the subsequent search of Ixta-Salazar's vehicle. Ixta-Salazar stipulated he was in the United States illegally and he owned the firearm discovered during the search.

At trial, the jury heard testimony from four government witnesses, all of whom testified they witnessed Ixta-Salazar sell methamphetamine. Robert Morris testified he obtained at least ten pounds of methamphetamine from Ixta-Salazar during the period of the conspiracy. Another witness, Jarrod King, testified he received at least two and a half pounds of methamphetamine from Ixta-Salazar during the same period. Additionally, Fred Herron testified he saw Ixta-Salazar deliver methamphetamine to King, who in turn delivered the drugs to Herron. Finally, Raymond Crawford described two occasions on which Ixta-Salazar delivered methamphetamine to Morris at his trailer.

Ixta-Salazar was found guilty following a jury trial of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, and being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5)(a).

The first issue Ixta-Salazar raises is whether the evidence presented at trial was sufficient to prove he participated in a conspiracy to distribute methamphetamine. We review de novo Ixta-Salazar's claim of insufficient evidence, "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Whirlwind Soldier, 499 F.3d 862, 869 (8th Cir. 2007) (internal quotation marks omitted). The conviction will be sustained unless no reasonable jury could have found the accused guilty of the crime charged. Id. A conviction on a conspiracy charge requires that the government prove beyond a reasonable doubt (1) the existence of an agreement to achieve an illegal purpose, (2) that the defendant knew of the agreement, and (3) that the defendant knowingly became part of the agreement. United States v.

Johnson, 470 F.3d 1234, 1237 (8th Cir. 2006). "Moreover, a conspiracy conviction may be based on indirect or circumstantial evidence, including solely testimony from co-conspirators." Whirlwind Soldier, 499 F.3d at 870. After a careful review of the record, we conclude the evidence was sufficient for the jury to find Ixta-Salazar guilty of conspiracy to distribute methamphetamine.

Ixta-Salazar next argues that his sentence amounts to cruel and unusual punishment, in violation of the Eighth Amendment. "[A] penalty may be cruel and unusual because it is excessive and serves no valid legislative purpose." Furman v. Georgia, 408 U.S. 238, 331 (1972) (Marshall, J., concurring). In making its determination, courts are guided by "objective indicia of society's standards, as expressed in legislative enactments and state practice with respect to executions." Kennedy v. Louisiana, 128 S.Ct. 2641, 2650 (2008) (quoting Roper v. Simmons, 543 U.S. 551, 563 (2005)). Consensus is not dispositive, however. Whether a punishment is disproportionate to the crime also depends on the standards elaborated by controlling precedents and on courts' own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose. Id.

In this case, Ixta-Salazar was sentenced to 235 months' imprisonment, which represented the bottom end of the presumptive range under the sentencing guidelines. Ixta-Salazar does not challenge the district court's calculation of the guidelines range. In United States v. Rudolph, 970 F.2d 467, 470 (8th Cir. 1992), we held that the mandatory minimum sentence of fifteen years imprisonment under § 924(e) is not cruel and unusual punishment and does not violate the Eighth Amendment. Subsequently, we held in United States v. Yirkovsky, 259 F.3d 704, 707 (8th Cir. 2001), that a sentence of 180 months' imprisonment for possessing one round of ammunition was not cruel and unusual in light of the mandatory minimum sentences imposed by Congress. We reach the same conclusion here, and hold that Ixta-Salazar's sentence does not amount to cruel and unusual punishment.

We affirm.

_____

-3-