# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4049

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Julie M. Waldron, | * |
| | * |
| Appellee. | * |

Appeals from the United States
District Court for the Southern
District of Iowa.

_____

No. 04-1063

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Julie M. Waldron, | * |
| | * |
| Appellant. | * |

_____

Submitted:  June 17, 2004
Filed:  June 25, 2004

_____

Before MORRIS SHEPPARD ARNOLD, FAGG, and RILEY, Circuit Judges.

FAGG, Circuit Judge.

Julie M. Waldron pleaded guilty to knowingly and fraudulently concealing property from her Chapter 7 bankruptcy estate in violation of 18 U.S.C. § 152(1). At sentencing, the district court declined to increase Waldron's offense level by two under U.S.S.G. § 2F1.1(b)(4)(B) (1998) for violating a judicial process. Although Waldron had received an inheritance and refused the bankruptcy trustee's directive to surrender the money, the court concluded Waldron had not violated a judicial process, but had merely taken "some actions that were inconsistent with the advisory comments by the trustee." The court sentenced Waldron to three years of probation and ordered restitution. The Government appeals, and Waldron cross-appeals.

Waldron and her husband filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on March 1, 1999. Their bankruptcy schedules showed no interest in real property and only $1458 in personal property. The Waldrons listed nearly $75,000 in unsecured, nonpriority debts, with over fifty unsecured creditors. After the Waldron's filed their petition, Waldron's father died. At the first meeting of creditors in late April 1999, the trustee asked the Waldrons whether they would be inheriting any property within the next six months. Waldron replied that her father had passed away and she would get something from the estate. The trustee told Waldron any inheritance would be property of the estate and would have to be turned over to the trustee. The trustee also spoke with one of the estate's executors, Waldron's brother Gary, and told him the inheritance would be bankruptcy estate property. In late September 1999, Gary went with Waldron to a bank with her share of the inheritance, $22,832, and she deposited the money into two accounts jointly held by her and Gary. Gary did not ask for his name to be on the accounts, which were opened after the bankruptcy was filed and thus were not disclosed on Waldron's bankruptcy schedules.

The trustee learned in late November 1999 that the $22,832 inheritance had been distributed, that Waldron had bought a car with part of the money, and that only $12,000 remained unspent. The trustee called Waldron and told her to provide the remaining funds to the bankruptcy estate and to provide a detailed accounting for the rest. Waldron refused, stating she wanted to talk to her attorney first. The trustee wrote to Waldron's attorney, who then wrote to Waldron and told her to turn the funds over to the trustee immediately. Despite the repeated demands of the bankruptcy trustee and the admonitions of her own attorney, Waldron never relinquished the funds to the bankruptcy trustee for distribution to her creditors. Instead, she continued to spend the money, and withdrew the remaining balances in August and October 2000.

In its appeal, the Government contends the district court should have increased Waldron's sentence under § 2F1.1(b)(4)(B) because our precedent holds the concealment of assets from a bankruptcy estate is a violation of judicial process as a matter of law. United States v. Mohamed, 161 F.3d 1132, 1136 (8th Cir. 1998); United States v. Cheek, 69 F.3d 231, 233 (8th Cir. 1995); United States v. Lloyd, 947 F.2d 339, 340 (8th Cir. 1991); see also U.S.S.G. § 2B1.1(b)(7) (recent amendment to § 2F1.1(b)(4)(B) directing a two-level increase if the offense involved "a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding"). Waldron contends the increase does not apply because she did not attempt to conceal the inheritance from the trustee, but merely failed to turn over bankruptcy estate assets after discharge had already been granted. Contrary to this contention, Waldron stipulated in her plea agreement that "she knowingly and fraudulently concealed [the $22,832 in inheritance] from the Chapter 7 Trustee and creditors," and "[t]he $22,832 was property of the Waldron Chapter 7 bankruptcy estate." By refusing to turn over the inheritance, which Waldron conceded was part of the bankruptcy estate, Waldron violated the judicial process as a matter of law. See United States v. Novak, 217 F.3d 566, 575 (8th Cir. 2000) (§ 152 is a broad provision attempting to cover all possible methods a debtor may use to defeat the

bankruptcy law by keeping assets from being equitably distributed among creditors). Thus, the district court should have imposed a two-level increase under § 2F1.1(b)(4)(B).

In her cross appeal, Waldron asserts the district court should not have increased her offense level by two under U.S.S.G. § 2F1.1(b)(2) (1998) for more than minimal planning or a scheme to defraud more than one victim because she did not engage in a scheme to defraud. A scheme to defraud refers to "a design or plan to obtain something of value from more than one person." Id. n. 4. Behavior intended to allow a debtor to retain concealed property that would otherwise be subject to bankruptcy estate administration for the benefit of creditors is a scheme to defraud. United States v. Shadduck, 112 F.3d 523, 531 (1st Cir. 1997). Here, the district court found Waldron had a scheme in the sense that she knew she should not retain the money and that it was part of the bankruptcy estate, but refused to turn the money over as required. We conclude the increase applies in this case.

We thus reverse on the Government's appeal and remand the case to the district court for resentencing consistent with this opinion. We affirm on Waldron's cross appeal.

_____