**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Silas MURPHY–ELLIS, Defendant— Appellant.**

No. 01–30394.
D.C. No. CR–01–00244–KI.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2002.

Decided Sept. 26, 2002.

Before GOODWIN, T.G. NELSON, and GRABER, Circuit Judges.

## MEMORANDUM *

Silas Murphy–Ellis appeals his conviction for interfering with a Forest Service officer in the performance of his duties in violation of 36 C.F.R. § 261.3(a). Murphy–Ellis challenges the denial of his motion for acquittal and his post-trial motions. Murphy–Ellis argues that: (1) the government failed to prove that he willfully intended to interfere with the officer, but proved only that his actions had the effect of interfering; (2) the information should have been dismissed because it failed to allege mens rea; and (3) the regulation is unconstitutionally overbroad and vague. The district court rejected these and similar arguments, and we likewise reject them as unsupported by law.

The enabling statute under which 36 C.F.R. § 261.3(a) was promulgated is 16 U.S.C. § 551. This statute authorizes the Secretary of Agriculture to create such regulations "as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction." Violations of such regulations are petty offenses, with a maximum jail term of six months and a fine of $5000. The regulations that carry these criminal penalties are found in 36 C.F.R. pt. 261. Murphy–Ellis was convicted of violating 36 C.F.R. § 261.3(a), which prohibits "[t]hreatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System."

The Supreme Court, in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), approved the doctrine that certain regulatory offenses may not require criminal intent. The Court was discussing "public welfare offenses" which, while they "do not threaten the security of the state in the manner of treason, ... may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted." *Id.* at 256. Offenses of this type are further characterized by being avoidable through the exercise of "no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.* Finally, "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." *Id.*

In *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), Justice Brennan elaborated on the standard for imposing strict criminal liability:

> Where a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not one taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent.

*Id.* at 613 n. 4 (Brennan, J., concurring) (internal citation and quotation marks omitted).

This court has generally treated violations of the regulations under 36 C.F.R. § 261 as strict liability offenses, which therefore do not require proof of a mental state. *See United States v. Kent,* 945 F.2d 1441, 1446 & n. 9 (9th Cir.1991) (no mens

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

rea element for § 261.10(b) (occupying National Forest lands for residential purposes without a permit) because ("the words of the regulation speak solely of action, with no reference to volition," and the regulation was a "'public welfare offense' as described in *Morissette*")); *United States v. Wilson*, 438 F.2d 525, 525 (9th Cir.1971) (per curiam) (no mens rea element for § 261.6(a) (cutting or damaging any timber or forest product without a permit)). The interference regulation in this case simply prohibits "interfering," without using any additional words that would suggest an element of specific criminal intent. There was no error in the court's rulings that only general intent is required and that the evidence demonstrated interference.

Turning to the constitutional claims, application of the overbreadth doctrine to preclude all enforcement of a statute is "strong medicine" to be employed "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Overbreadth scrutiny is less rigid when the questioned legislation regulates "conduct in the shadow of the First Amendment, but do[es] so in a neutral, noncensorial manner." *Id.* at 614.

Section 261.3(a) on its face regulates conduct, not expressive speech. Murphy–Ellis claims that taping an event is conduct protected by the First Amendment. In *United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir.1987), the court said: "If conduct contains both speech and non-speech elements, and if Congress has the authority to regulate the non-speech conduct, incidental restrictions on freedom of speech are not constitutionally invalid." We agree. Any restriction on Murphy–Ellis' freedom to make the videotape of the

Forest Service officer's conduct was incidental to the prohibition against interfering with the officer.

Because § 261.3(a) proscribes a general intent offense, Murphy–Ellis' remaining assignments of error are moot.

AFFIRMED.