# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3775

_____

United States of America,

          Appellee,

v.

Gilberto Lara-Ruiz, also
known as Hill,

          Appellant.

Appeal from the United States
District Court for the Western
District of Missouri.

_____

Submitted: April 18, 2012
Filed: June 4, 2012

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

A jury convicted Gilberto Lara-Ruiz, also known as "Hill," of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and use of a firearm during and in relation to a drug trafficking crime, also in violation of § 924(c)(1)(A). The district court sentenced Lara-Ruiz to a total of thirty years' imprisonment–a mandatory minimum five-year sentence on the possession count, see 18 U.S.C. § 924(c)(1)(A)(i), and a consecutive mandatory minimum twenty-five year sentence on the use count, see id. § 924(c)(1)(C)(i). Lara-Ruiz appeals, asserting that (1) the terms of a previous plea agreement barred his

prosecution for the offenses at issue in this case; (2) the jury instructions constructively amended the indictment; and (3) his defense attorney made improper comments to the jury that infringed upon his right to a fair trial. We reverse in part, affirm in part, and remand for resentencing.

## I.    BACKGROUND

### A.    Lara-Ruiz I

In February 2007, in the United States District Court for the Western District of Missouri, Lara-Ruiz was charged in a superseding indictment with (1) possession with intent to distribute 50 or more grams of methamphetamine on December 29, 2006, in violation of 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute 500 or more grams of methamphetamine on December 21, 2006, also in violation of § 841(a)(1); (3) conspiracy to distribute and possess with intent to distribute 500 or more grams of methamphetamine between December 2004 and December 26, 2006, in violation of §§ 841(a)(1) and 846; and (4) improper entry into the United States by an alien, in violation of 8 U.S.C. § 1325(a).

In May 2007, Lara-Ruiz entered into a plea agreement with the United States Attorney for the Western District of Missouri wherein he agreed to plead guilty to improper entry and possession with intent to distribute 500 or more grams of methamphetamine on December 21, 2006. In exchange for Lara-Ruiz's plea, the government agreed to the following non-prosecution provision:

> Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to possession with intent to distribute methamphetamine for which it has venue and which arose out of the defendant's conduct described [in the plea agreement].

Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss [the remaining counts in the superseding indictment].

Appellant's App. at 19. As an exception to this non-prosecution provision, the plea agreement provided,

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any other criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

Id. The district court accepted the plea agreement and sentenced Lara-Ruiz to a total of eighty-seven months' imprisonment.

## B.    Lara-Ruiz II

Notwithstanding the terms of the plea agreement in Lara-Ruiz I, in April 2009, Lara-Ruiz was charged along with several co-defendants in a fifteen-count indictment in the Western District of Missouri. The counts in the indictment were related to Lara-Ruiz's involvement in methamphetamine distribution between January 1, 2005, and December 27, 2006. Among such counts was a firearm possession offense (Count 14), charged in the indictment as follows:

[O]n or between January 1, 2006 and December 27, 2006, in the Western District of Missouri, . . . LARA-RUIZ . . . , in furtherance of [the drug trafficking crimes set out in the indictment,] possessed at least one firearm, to wit: a "sawed-off" shotgun seen at his house in late 2006, an AR-15 style rifle shown at his house in mid-2006, a black 9 mm semi-auto pistol traded for drug debt reduction and methamphetamine in mid-2006, and a black .32 caliber semi-auto pistol and a .22 caliber revolver

traded for methamphetamine to a co-conspirator in 2006, all contrary to the provisions of [18 U.S.C. § 924(c)(1)(A)(i)].

In addition, Lara-Ruiz was charged with unlawfully using a firearm (Count 15) as follows:

[O]n or about November 18, 2006, in the Western District of Missouri, . . . LARA-RUIZ . . . , during and in relation to [the drug trafficking crimes set out in the indictment,] used and discharged a firearm, to wit: a loaded handgun, all contrary to the provisions of [18 U.S.C. § 924(c)(1)(A)(iii)].

Lara-Ruiz filed a motion to dismiss the indictment on due process grounds, asserting that the non-prosecution clause in the Lara-Ruiz I plea agreement barred his prosecution for the charges in Lara-Ruiz II. The magistrate judge agreed, in part, with Lara-Ruiz and issued a report recommending dismissal of all charges against Lara-Ruiz except the firearm offenses enumerated above. The magistrate judge reasoned that the firearm offenses were considered "crimes of violence" under the United States Sentencing Guidelines and that the plea agreement permitted the government to prosecute Lara-Ruiz for such crimes regardless of whether it had knowledge of the crimes at the time it entered into the plea agreement. The district court adopted the magistrate judge's report and recommendation, and the case proceeded to trial on the firearm counts.

At trial, the government attempted to prove unlawful firearm possession on Count 14 by introducing evidence that Lara-Ruiz showed a drug customer an AR-15-style rifle in mid-2006 and accepted .22 caliber and 9mm handguns in exchange for drug-debt reduction and methamphetamine in 2006. To prove unlawful use of a firearm on Count 15, the government presented evidence that Lara-Ruiz used a handgun to hit a drug customer in the head and shot the same drug customer's unoccupied vehicle multiple times. Lara-Ruiz's attorney openly conceded to the jury

that Lara-Ruiz engaged in methamphetamine distribution, but challenged the credibility of the government's witnesses and argued that Lara-Ruiz did not unlawfully possess or use the firearms at issue.

The jury found Lara-Ruiz guilty of possessing a firearm in furtherance of a drug trafficking crime on Count 14. Particularly relevant here, the jury noted on the specific verdict form its finding that Lara-Ruiz accepted .22 caliber and 9mm handguns in exchange for drug-debt reduction and methamphetamine but that he did not unlawfully possess an AR-15-style rifle.[1] On Count 15, the jury returned a general verdict form finding Lara-Ruiz guilty of using a firearm during and in relation to a drug trafficking crime. The district court sentenced Lara-Ruiz to five years' imprisonment on Count 14 and twenty-five years' imprisonment on Count 15, to be served consecutively, which represents the mandatory minimum sentences for these counts under 18 U.S.C. § 924(c)(1)(A)(i) and (c)(1)(C)(i), respectively. Lara-Ruiz appeals.

## II.    DISCUSSION
## A.    Breach of the Plea Agreement

Lara-Ruiz argues that the district court misinterpreted the Lara-Ruiz I plea agreement when it held that, notwithstanding the agreement's non-prosecution provision, the government was permitted to prosecute Lara-Ruiz for the firearm offenses charged in Counts 14 and 15. We review a district court's interpretation of a plea agreement de novo.[2] United States v. Thompson, 403 F.3d 1037, 1039 (8th Cir.

---

[1]Although the indictment charged Lara-Ruiz with unlawfully possessing a sawed-off shotgun, this particular weapon is not mentioned in the jury instructions or listed on the special verdict form. Needless to say, the jury did not find Lara-Ruiz guilty of unlawfully possessing a sawed-off shotgun.

[2]Lara-Ruiz acknowledges that he did not file objections to the magistrate judge's report and recommendation but we still review the district court's legal conclusions de novo. United States v. Maxwell, 498 F.3d 799, 801 n.2 (8th Cir. 2007).

2005).  To interpret a plea agreement, we apply "general contract principles" and try to "discern the intent of the parties as expressed in the plain language of the agreement when viewed as a whole."  United States v. Lewis, 673 F.3d 758, 762 (8th Cir. 2011) (quotations omitted).  "Allowing the government to breach a promise that induced a guilty plea violates due process."  Id. at 761 (quotation omitted).

Lara-Ruiz contends that the plea agreement's non-prosecution provision barred his prosecution for Counts 14 and 15 because, as the government has conceded, the government had knowledge of these offenses when it entered into the plea agreement. The key to Lara-Ruiz's argument is the plea agreement's exception to the non-prosecution provision, which provides that the government may prosecute Lara-Ruiz for

> an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any other criminal activity of which the United States Attorney for the Western District of Missouri has *no knowledge.*

Appellant's App. at 19 (emphasis added).  Lara-Ruiz contends that the "no knowledge" language at the end of the exception applies to all previously enumerated crimes–i.e., the government could only prosecute Lara-Ruiz for acts of "physical . . . violence against the person of another" if it had "no knowledge" of such acts at the time it entered into the plea agreement.  We disagree.

Under the plain language of the exception to the non-prosecution provision, the phrase "no knowledge" does not modify the clause "an act or attempted act of physical or sexual violence against the person of another."  All the clauses in the exception are separated by commas and the last clause is separated from previous clauses by the disjunctive "or."  Also, there is not a comma before the words "of which" in the last clause.  As such, the paragraph at issue plainly contains multiple independent clauses

and the phrase "no knowledge" only applies to the last clause. See Withrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 470 (8th Cir. 2004) (finding two independent clauses in a contract where the clauses were "separated by a comma and the disjunctive 'or,' with no comma before the word 'which' in the second clause"). The government was, accordingly, permitted to prosecute Lara-Ruiz for acts of "physical . . . violence against the person of another" even though it had knowledge of such acts at the time it entered into the plea agreement.

That said, an important question remains: Do the firearm offenses in this case constitute acts or attempted acts of "physical . . . violence against the person of another," as contemplated in the plea agreement? Although not raised by Lara-Ruiz, we directed the parties to address this and related questions at oral argument. See United States v. Granados, 168 F.3d 343, 346 (8th Cir. 1999) (per curiam) (recognizing our authority in criminal cases to sua sponte address critical issues affecting substantial rights). Because Lara-Ruiz did not raise this issue on his own, plain error review applies. Id. (applying plain error review to claim raised sua sponte by this court); see Puckett v. United States, 556 U.S. 129, 133-34 (2009) (holding that plain error reviews applies to forfeited claims that the government breached a plea agreement). Under plain error review, we have discretion to reverse if (1) there is an "error"; (2) the error is "plain"; (3) the error affects the defendant's "substantial rights"; and (4) the error seriously affects the "fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732-37 (1993) (quotations omitted).

To determine whether an "error" that was "plain" exists in this case, we begin with an analysis of the plain meaning of the phrase "physical violence," as used in the plea agreement. The adjective "physical" in this phrase plainly refers to concrete bodily acts as opposed to, for example, intellectual or emotional acts. Johnson v. United States, 130 S. Ct. 1265, 1270 (2010); The Am. Heritage Coll. Dictionary 1050 (4th ed. 2007) (defining the term "physical" as "[o]f or relating to the body as

distinguished from the mind or spirit").  And, the noun "violence" commonly refers to "[p]hysical force exerted for the purpose of violating, damaging, or abusing."  The Am. Heritage Coll. Dictionary at 1531.  In other words, the use of the term "violence" in the phrase at issue distinguishes violent force–"force capable of causing physical pain or injury," Johnson, 130 S. Ct. at 1271–from lesser degrees of force, such as slight "offensive touching." Id. at 1270.  The phrase "physical violence," then, clearly refers to a bodily act involving a substantial amount of force.

Further, the term "physical violence" is modified in the plea agreement by the phrase "against the person of another."  This language unambiguously highlights the entrenched distinction in criminal law between crimes against the person and, for example, crimes against property.  See, e.g., James v. United States, 550 U.S. 192, 200 (2007) (noting that burglary and arson are classified as crimes against property, not crimes against the person); Stuart P. Green, Deceit and the Classification of Crimes: Federal Rule of Evidence 609(a)(2) and the Origins of Crimen Falsi, 90 J. Crim. L. & Criminology 1087, 1088 (2000) (noting the universal use of "interest-based" classifications in criminal law, such as "crimes against the person," "crimes against the state," "crimes against property," and "crimes against public order").  Therefore, an act of "physical . . . violence against the person of another" plainly refers to a bodily act of substantial force against the person–not the property–of another.[3]

---

[3]The government asserts that we should disregard the plain meaning of this phrase and, instead, apply the definition of "crime of violence" articulated in U.S.S.G. § 4B1.2(a).  "Crime of violence" is a term of art and its relatively broad definition encompasses crimes involving the "use of physical force against the person of another," id. § 4B1.2(a)(1), as well as certain property crimes and crimes that merely "present[] a serious potential risk of physical injury to another," id. § 4B1.2(a)(2). We decline the government's invitation to superimpose this definition of "crime of violence" onto the plea agreement.  First, the plea agreement does not refer to U.S.S.G. § 4B1.2(a) or use the phrase "crime of violence."  In addition, the plain language of the plea agreement describes a specific and much narrower class of offenses than is described in U.S.S.G. § 4B1.2(a).  We will not "force term-of-art definitions into contexts where they plainly do not fit and produce nonsense." Johnson, 130 S. Ct. at 1270 (quotation omitted).

Applying this definition to the offenses at issue in this case, we hold that the plea agreement barred the government from prosecuting Lara-Ruiz on Count 14 for trading drugs and reducing drug debts in exchange for firearms.[4] These transactions simply do not constitute bodily acts of substantial force against the person of another and, consequently, Lara-Ruiz's prosecution and conviction based on such conduct constituted a clear violation of his due process rights. In addition, based on the facts of this case, we have little difficulty finding that this "error" that was "plain" affects Lara-Ruiz's substantial rights and the fairness, integrity and public reputation of judicial proceedings. See Granados, 168 F.3d at 346 ("There can be little doubt that the [defendant's] substantial rights are affected if his prison sentence is longer than it should have been."); Puckett, 556 U.S. at 142-43 ("[W]hen the Government reneges on a plea deal, the integrity of the system may be called into question . . . ."). After all, Lara-Ruiz was sentenced to a mandatory-minimum five years' imprisonment on Count 14, to be served consecutive to his sentence on Count 15. In addition, his conviction on Count 14 triggered a mandatory-minimum sentence of twenty-five years' imprisonment on Count 15. See 18 U.S.C. § 924(c)(1)(C)(i) (imposing a mandatory minimum twenty-five years' imprisonment for a "second or subsequent" conviction under 18 U.S.C. § 924(c)). Therefore, we hold that the elements of plain error review are satisfied with respect to Count 14.

We do not come to the same conclusion with regard to Count 15, however. To prove this charge, the government introduced the testimony of two witnesses who testified that Lara-Ruiz used a gun to hit a drug customer in the head. The government also introduced evidence that Lara-Ruiz shot the same drug customer's unoccupied vehicle multiple times. Lara-Ruiz concedes that, even if the act of shooting an unoccupied vehicle, by itself, is not an act of physical violence *against*

_____

[4]We need not decide whether the government could have prosecuted Lara-Ruiz for conduct related to his alleged possession of an AR-15-style rifle or sawed-off shotgun because the jury did not find him guilty of unlawfully possessing those particular weapons.

*the person* of another, his conviction on Count 15 must stand. This is because the jury returned a guilty verdict on a general verdict form, and using a gun to hit someone in the head is undoubtedly an act of physical violence against the person of another. Under these circumstances, Lara-Ruiz cannot demonstrate a breach of the plea agreement with regard to Count 15 that affected his substantial rights–that is, he cannot show a "reasonable probability that, but for [the error in question], the result of [the trial] proceeding would have been different." United States v. Kent, 531 F.3d 642, 656 (8th Cir. 2008) (quotation omitted); see Puckett, 556 U.S. at 141 ("The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice . . . .").

Before we discuss Lara-Ruiz's remedy with respect to Count 14, we pause to address the government's argument that Lara-Ruiz waived any challenge to Count 14's classification as an act of physical violence against the person of another. See Puckett, 556 U.S. at 135 (explaining that the first prong of plain error review requires an "error" that has not been "affirmatively waived"). This argument highlights the important distinction between forfeiture and waiver. The "forfeiture" of a right arises from a "failure to make the timely assertion of [the] right and limits appellate review to plain error." Lewis, 673 F.3d at 761 n.1 (alteration in original) (internal quotation omitted). In contrast, "waiver" is the "intentional relinquishment or abandonment of a known right," id. (quotation omitted), and "a waived claim is unreviewable on appeal." Id.

To support its waiver theory, the government relies on a discussion between the magistrate judge and Lara-Ruiz's attorney during the hearing on Lara-Ruiz's motion to dismiss the indictment. During the colloquy, the magistrate judge asked Lara-Ruiz's attorney,

> The government argues in its brief that even if the Court accepts your argument that Counts 14 and 15 of the current indictment against Mr. Lara-Ruiz remain viable because they charge *use* of a firearm in

-10-

connection with the drug trafficking offense, and Count 15 [sic] involves use of a *sawed-off shotgun* here, am I understanding that they're conceding those remain viable charges for Mr. Lara-Ruiz in this case?

Hr'g Tr. at 15 (Aug. 3, 2010) (emphasis added). Lara-Ruiz's attorney responded that "defense attorneys don't like to concede anything." Id. at 16. The magistrate judge then asked, "[The government] argues that they are crimes of violence, which were specifically excluded in the plea agreement in the prior case. Is that a correct statement and circumstance?" Id. Lara-Ruiz's attorney replied, "Based on the facts that the government alleges, that's true." Id.

We disagree with the government that this colloquy depicts an intentional relinquishment of a known right that bars us from reviewing Lara-Ruiz's conviction on Count 14 for plain error. Parsing out the particulars of the magistrate judge's questioning,[5] the magistrate judge specifically asked Lara-Ruiz's attorney whether *use* of a firearm in connection with a drug trafficking crime and *use* of a *sawed-off shotgun* constituted the sort of violent acts excepted from the plea agreement's non-prosecution provision. While Count 15 pertained to Lara-Ruiz's "use" of firearms, Count 14 charged Lara-Ruiz with, and the jury found him guilty of, unlawful "possession" of firearms. Thus, the magistrate judge's question with regard to "use of a firearm in connection with a drug trafficking crime" only pertained to the acts charged under Count 15. As discussed above, Lara-Ruiz concedes that his conviction under Count 15 must stand, and Lara-Ruiz's waiver, if any, with regard to Count 15 does not amount to a waiver with regard to Count 14. Likewise, Lara-Ruiz's waiver, if any,[6] regarding use of a sawed-off shotgun does not preclude us from analyzing

___

[5]The magistrate judge acknowledged that its initial question was "perhaps . . . too aggressive." Hr'g Tr. at 16.

[6]The magistrate judge specifically asked Lara-Ruiz whether "use" of a sawed-off shotgun constituted a violent act, but Count 14 only charged Lara-Ruiz with unlawful "possession" of a sawed-off shotgun.

-11-

whether Lara-Ruiz could be prosecuted for trading drugs for .22 caliber and 9mm handguns. After all, the jury did not find Lara-Ruiz guilty of any offense involving the use (or possession) of a sawed-off shotgun.

Finally, we address Lara-Ruiz's remedy with respect to Count 14. The parties agree that, if we find reversible plain error on Count 14, we should reverse Count 14 and remand for resentencing. Typically, "[w]hen the government fails to fulfill a material term of a plea agreement, the defendant may seek specific performance *or* may seek to withdraw his plea" on remand. United States v. Barresse, 115 F.3d 610, 612 (8th Cir. 1997) (emphasis added). But, because Lara-Ruiz has already served a considerable portion of his sentence from Lara-Ruiz I, "permitting the withdrawal of [Lara-Ruiz's] plea [in Lara-Ruiz I] would be an empty remedy." United States v. Williams, 510 F.3d 416, 427 (3d. Cir. 2007) (quotation omitted). Thus, we agree with the parties that specific performance is the only appropriate remedy in this case. See id. Therefore, exercising our discretion under plain error review, we reverse Lara-Ruiz's conviction on Count 14, which necessarily requires reversal of the mandatory minimum twenty-five-year sentence on Count 15.

## B.     Constructive Amendment to the Indictment

Next, Lara-Ruiz argues that the jury instructions constructively amended the indictment. The parties agree that plain error review applies because Lara-Ruiz failed to raise this issue below. See United States v. Gavin, 583 F.3d 542, 546-47 (8th Cir. 2009) (applying plain error review to forfeited constructive amendment claim). "Constructive amendment occurs when the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them." Id. at 546 (internal quotation omitted). Since we have reversed Lara-Ruiz's conviction on Count 14 on other grounds, our analysis on this issue is limited to Count 15.

Lara-Ruiz argues that the jury instructions constructively amended Count 15 as charged in the indictment because the instructions listed the predicate drug trafficking crime as "distribution of methamphetamine"[7] whereas the indictment described the predicate offenses as "continuing criminal enterprise"[8] and aiding and abetting "possess[ion] with intent to distribute . . . methamphetamine."[9]

Lara-Ruiz's constructive amendment argument has some merit. See United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994) (noting that "[d]istribution and possession with intent to distribute are two separate trafficking offenses"). But, under plain error review, Lara-Ruiz must show that a constructive amendment affects his substantial rights and the fairness, integrity or public reputation of judicial proceedings. Gavin, 583 F.3d at 547. This he cannot do. Lara-Ruiz's strategy at trial centered on disputing that he used (or possessed) firearms–he did not dispute that,

---

[7]To prove that a defendant distributed methamphetamine in violation of 21 U.S.C. § 841(a)(1), the government must show that the defendant "knowingly sold or otherwise transferred methamphetamine." United States v. Aguilar-Portillo, 334 F.3d 744, 747 (8th Cir. 2003) (quotation omitted).

[8]To prove a defendant engaged in a continuing criminal enterprise, the government must show the defendant committed:

(1) a felony violation of the federal narcotics laws; (2) as part of a continuing series of three or more related felony violations of federal narcotics laws; (3) in concert with five or more other persons; (4) whom [the defendant] organized, managed, or supervised; and (5) from which he derived substantial income or other resources.

United States v. Van Nguyen, 602 F.3d 886, 899 (8th Cir. 2010).

[9]To prove that a defendant possessed with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), "the government must demonstrate that the defendant knowingly possessed and intended to distribute [methamphetamine]." United States v. Rodgers, 18 F.3d 1425, 1429 (8th Cir. 1994).

-13-

along with numerous associates, he was actively engaged in methamphetamine possession and distribution. In fact, Lara-Ruiz's attorney openly acknowledged to the jury, "My client is a distributor of methamphetamine." There was also overwhelming evidence introduced at trial, including the testimony of Lara-Ruiz's ex-associates, regarding Lara-Ruiz's methamphetamine possession and distribution enterprise. And finally, two witnesses testified that, on November 18, 2006, Lara-Ruiz used a firearm to hit a methamphetamine customer in the head because she failed to pay a drug debt. On this record, there is "no reasonable probability [Lara-Ruiz] would have been acquitted under the correct jury instruction."[10] Id.

## C.    Defense Counsel's Comments

Finally, Lara-Ruiz argues that he was deprived of a fair trial because defense counsel conceded to the jury that Lara-Ruiz was a methamphetamine dealer and that Lara-Ruiz previously pled guilty to a methamphetamine distribution offense. To the extent Lara-Ruiz argues that the trial court erred when it failed to sua sponte intervene and take curative measures, his argument is without merit. And, to the extent Lara-Ruiz challenges defense counsel's trial strategy, such a claim "should be brought by motion under 28 U.S.C. § 2255 rather than on direct appeal." United States v. Turner, 431 F.3d 332, 336 n.4 (8th Cir. 2005).

---

[10]Lara-Ruiz also argues that Count 15's verdict form independently amended the indictment. We disagree. See United States v. Brown, 330 F.3d 1073, 1077 (8th Cir. 2003) ("[W]e are aware of no case in which a verdict form by itself was held to constitute a constructive amendment."). The verdict form described the predicate offense as a "drug trafficking crime," which was defined in the jury instructions as "distribution of methamphetamine." Id. (explaining that jury instructions and verdict form must be read as a whole to determine whether there was a constructive amendment). Thus, our holding regarding the instructions' use of "distribution of methamphetamine" applies with equal force to Lara-Ruiz's argument regarding the verdict form.

## III. CONCLUSION

For the foregoing reasons, we (1) affirm Lara-Ruiz's conviction on Count 15; (2) reverse his conviction on Count 14 and the mandatory-minimum twenty-five year sentence on Count 15; and (3) remand with instructions to vacate Lara-Ruiz's conviction and sentence on Count 14 and to resentence Lara-Ruiz on Count 15.

_____