# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-2503

———————————————

United States of America

*Plaintiff - Appellee*

v.

Thomas P. McDill, Jr.

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of South Dakota - Rapid City

——————————

Submitted: February 10, 2017
Filed: September 15, 2017

——————————

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

Following a bench trial before a magistrate judge, Thomas McDill, who represented himself, was convicted of two violations of 36 C.F.R. § 261.3(c), which prohibits "[t]hreatening, intimidating, or intentionally interfering with any Forest officer . . . while engaged in, or on account of, the performance of duties for the protection, improvement, or administration of the National Forest System or other duties assigned by the Forest Service." He appeals those convictions. We reverse.

# I. Background

Thomas McDill owned property abutting Black Hills National Forest near Custer, South Dakota. On May 20, 2013, McDill visited the office of the United States Forest Service's Hell Canyon Ranger District, which manages part of the Black Hills National Forest. He spoke with Todd Gohl, a support services specialist for the district, about slash piles (piles of debris from trimming bushes and trees) on forest land. Gohl testified at trial that he was unable to answer all of McDill's questions and suggested McDill file a Freedom of Information Act (FOIA) request. Gohl then referred McDill to timber staff officer Patricia Hudson because Gohl thought she might be able to answer more of McDill's questions. Hudson testified that she and McDill spoke for about forty-five minutes. According to Gohl, McDill later returned to the office with a FOIA request. Gohl testified that although this was not the proper way to file a FOIA request, the Forest Service initiated action on the request.

On the morning of June 11, 2013, McDill visited the office of the Black Hills National Forest Supervisor and spoke with Gregory McGranahan, a timber sale contracting officer. McGranahan testified at trial that McDill asked him about removing some beetle-infested trees on forest land near his property. McGranahan explained that McDill would need to obtain a permit from the district office, and arranged for McDill to meet a Forest Service employee at that office at 1:30 p.m. At around 11:30 a.m., McDill arrived at the district office. When he arrived, Gohl was at the office. Gohl testified that McDill asked him for a letter permitting his friend to remove the beetle-infested trees. Gohl told McDill that no one with the authority to provide such a letter was available, because the other Forest Service employees were at an internal district safety meeting. Gohl informed McDill that someone would be available to speak with him around 1:00 p.m., after the meeting had concluded. McDill asked where the meeting was, and Gohl told him it was at the local high school.

McDill proceeded to the high school, where the safety meeting was coming to a close. Hudson had attended the meeting, and McDill approached her as she was leaving. Hudson testified that she recognized McDill from their prior interaction, and that she was startled to see him at the high school because the safety meeting was not public. Hudson told him she was going to lunch, and would meet with him between 1:30 and 2:00 p.m. that day. McDill told her that he did not want to wait. Hudson asked him what she could help him with, and McDill asked her about cutting down beetle-infested trees near his land. Hudson said it was too late in the season, and the Forest Service would not issue a permit. McDill asked what would happen if he cut them anyway, and Hudson said he would be issued a fine. At this point, Hudson testified, McDill was moving into her space and speaking in an aggressive tone, and she felt uncomfortable and intimidated. She eventually told McDill that she would not discuss the matter any further, and McDill left. Another employee, Kelly Honors, testified that she heard Hudson use an uncharacteristically loud voice to respond to McDill, and that Hudson remained "very shaken" after McDill left.

Hudson contacted Forest Service law enforcement officer Eric Nelson, and explained what happened. She told him that she thought McDill would come to her office and that she did not want to meet with him. Nelson testified that he encountered McDill in the district office parking lot around 1:30 p.m. that day. McDill explained to Nelson that he wanted a permit to cut down the beetle-infested trees. He also told Nelson that he wanted to start a business to remove slash piles from forest land. Nelson issued a citation to McDill for "intentionally interfering w USFS employee in process of her duties" in violation of 36 C.F.R. § 261.3(c) for his conduct toward Hudson after the safety meeting. Nelson also gave McDill a letter acknowledging receipt of the FOIA request McDill had given Gohl. Nelson told McDill that they would be willing to work with McDill after his FOIA request was fully processed and returned, but that in the meantime, McDill was to have no contact with other Forest Service employees.

-3-

The letter Nelson gave McDill indicated that a Forest Service employee named Matt Spring would contact McDill to provide him with information regarding the slash piles. McDill discovered that Spring worked at the Forest Service's fire management office in Custer and decided to visit the office to speak to Spring. When he arrived, Gwen Lipp, the district fire management officer, was leaving the building. She testified at trial that she was surprised to see McDill because she was not expecting any visitors to the office. Lipp informed McDill that Spring was not at work that day, and offered to assist him instead. Lipp testified that McDill seemed angry and frustrated. They went inside the building and sat in her office. Because she felt nervous about being alone with McDill, she asked another fire management employee to remain in the office next to hers. She testified that she and McDill spoke for about forty minutes, and that he had a "roller-coaster" demeanor and would not stay calm. According to Lipp, McDill told her that he was upset because he had been arrested for harassing a Forest Service employee, when he had simply been trying to obtain information. Eventually, Lipp and McDill agreed on a plan for Lipp to help him find the information he sought. After McDill left, Lipp contacted Forest Service law enforcement and explained what happened. Nelson then issued a second citation to McDill for "harassment + interference w/ USFS employee in process of her duties" in violation of 36 C.F.R. § 261.3(c) for his conduct toward Lipp.

At the close of trial, the magistrate judge orally convicted McDill of both counts, and imposed fines and processing fees totaling $650. McDill appealed pro se to the district court, and the district court denied the appeal. McDill appealed pro se to the Eighth Circuit, and we appointed an attorney, who filed a supplemental brief.

## II. Discussion

36 C.F.R. § 261.3(c) prohibits "[t]hreatening, intimidating, or intentionally interfering with any Forest officer, volunteer, or human resource program enrollee while engaged in, or on account of, the performance of duties for the protection,

-4-

improvement, or administration of the National Forest System or other duties assigned by the Forest Service." The two citations McDill received from Nelson listed his offenses as "intentionally interfering w USFS employee in process of her duties" and "harassment + interference w/ USFS employee in process of her duties," respectively.

"It is axiomatic that a defendant may not be tried on charges that were not made in the indictment." United States v. Novak, 217 F.3d 566, 574 (8th Cir. 2000). A constructive amendment arises when the "essential elements of the offense" described in the charging instrument "are altered, either actually or in effect, by the prosecutor or the court" so that a "substantial likelihood" exists that the defendant was convicted of an uncharged offense.[1] Id. at 574, 575 (internal alterations omitted) (quoting United States v. Emery, 186 F.3d 921, 927 (8th Cir. 1999)). A constructive amendment implicates a defendant's Fifth Amendment right to indictment by a grand jury and Sixth Amendment right to notice of the charges against him. United States v. Stuckey, 220 F.3d 976, 981 & n.5 (8th Cir. 2000). Whether or not a constructive amendment that violates a defendant's right to indictment by a grand jury would be reversible error per se, compare id. at 981, with United States v. Gill, 513 F.3d 836, 849–50 (8th Cir. 2008), we have suggested that when the right to a grand jury is not at issue, "[a] prejudice analysis would have to be performed to determine whether a defendant's . . . due process or notice rights were materially affected." Id. at 981 n.5; see Lucas v. O'Dea, 179 F.3d 412, 417–18 (6th Cir. 1999). Here, McDill had no right

---

[1]"We have frequently discussed the difference between" a constructive amendment and a variance in the evidence. Stuckey, 220 F.3d at 980–81. "The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." Id. This case does not raise the possibility of a variance because the citations describe the charges against McDill, and do not specify what particular conduct gave rise to the charges.

to a grand jury because he was charged with only petty offenses.  See Fed. R. Crim. P. 7(a).

Because McDill did not raise the issue, we apply plain error review to the question of whether he was subjected to a constructive amendment that prejudiced his Sixth Amendment notice rights.  See United States v. Granados, 168 F.3d 343, 346 (8th Cir. 1999) (explaining that we have the authority to raise sua sponte and review for plain error critical issues affecting a criminal defendant's substantial rights). "Under plain error review, we have discretion to reverse if (1) there is an 'error'; (2) the error is 'plain'; (3) the error affects the defendant's 'substantial rights'; and (4) the error seriously affects the 'fairness, integrity or public reputation of judicial proceedings.'"  United States v. Lara-Ruiz, 681 F.3d 914, 920 (8th Cir. 2012) (quoting United States v. Olano, 507 U.S. 725, 732–37 (1993)).

Here, there was error that was plain.  Because the citations charged McDill with harassment (which is not prohibited by § 261.3(c)) and interference, the verdict was permissible only if it rested on the theory that McDill intentionally interfered with Hudson and Lipp.  However, both the government and the court effectively altered the charges set forth in the citations.

The government's case focused primarily on establishing that McDill intimidated Hudson and Lipp.  The government elicited testimony from Hudson that she felt uncomfortable and threatened when speaking with McDill, and testimony from Lipp that she was intimidated by McDill's size and demeanor.  In closing, the government stated with respect to the first citation: "Your Honor, we believe the evidence proves beyond a reasonable doubt that . . . the Defendant intimidated and arguably interfered, but we think clearly intimidated a forest officer."  With respect to the second citation, the government argued: "[Lipp] said she was intimidated by the aggressive posture that the Defendant assumed at that time.  And we think in the same manner [he] violated that statute [36 C.F.R. § 261.3(c)]."

The court's consideration of McDill's case also reached beyond the charges of the citations. In handing down the verdict, the court told McDill: "The issue is, were you, first of all, intimidating, interfering, or threatening them. And, second of all, were you doing so because they were Forest Service officers. And after hearing all the evidence from both sides, I come to the definite conclusion that the answer on both tickets is yes." Further, the court's explanation of the verdict relied in part on the theory that McDill intimidated or threatened Hudson and Lipp. For example, the court told McDill: "No one's arguing with the fact that you were trying to get answers to questions. It's how you went about doing it. It's the angry demeanor, the insistence, the leaning into their physical space. And these threats you threw about, what are you going to do about it if I—if I don't listen to you."

In light of the government's evidence and the court's explanation of the verdict, there was at least a substantial likelihood that McDill was convicted of an offense for which he was not charged. See Novak, 217 F.3d at 575; see also Street v. New York, 394 U.S. 576, 586 (1969) (explaining that a general verdict in a bench trial must be set aside if "we cannot know that it did not rest on the invalid constitutional ground" (quoting Williams v. North Carolina, 317 U.S. 287, 292 (1942))). Accordingly, McDill was subjected to a constructive amendment. Further, this error was plain; the citations clearly charge McDill with harassment and interference, not with intimidation or threats.

Additionally, the constructive amendment materially and substantially affected McDill's right to notice of the charges against him. McDill's trial defense focused primarily on the allegations of the citation: harassment and interference. For example, he asked Hudson whether she was on her lunch break when he spoke with her, and asked Nelson whether Lipp was on duty at the time he spoke with her. He also asked Lipp whether she felt he had made any "sexual harassment kind of

comments" toward her. McDill himself testified: "I was always talking about what I think their job description is. . . . [T]hey both could have just said I'm not going to talk to you and that would have been [the] end of it. But they did[n't] and so I was not interfering or interrupting any working that they were doing or it was in their job description." In short, McDill relied on the language of the citations in preparing his defense, and was unfairly surprised when the government pursued a conviction based on the theory that he intimidated or threatened Hudson and Lipp. The constructive amendment was particularly prejudicial because McDill had no right to appointed counsel and represented himself at trial. Because this error effectively deprived McDill of the ability to prepare and present his defense, it undermined the "fairness, integrity or public reputation of judicial proceedings." Lara-Ruiz, 681 F.3d at 920. Accordingly, McDill was subjected to a constructive amendment that amounted to plain error, and we will reverse his convictions.

Although we have already determined that McDill's convictions should be reversed, we must also consider McDill's argument that insufficient evidence supports his convictions, because unlike a reversal based on a constructive amendment, a reversal based on insufficient evidence bars retrial. See United States v. Farr, 536 F.3d 1174, 1187 (10th Cir. 2008). As we understand McDill's argument, he contends that the government failed to prove he intended to intimidate, threaten, or interfere with Hudson and Lipp; and that no reasonable person would perceive his conduct as threatening, intimidating, or interfering. Where there has been a constructive amendment, "we consider whether sufficient evidence was introduced at trial to support the verdict the [court] rendered," rather than a verdict on the original charges. Id. And in cases like this one where the court has issued a general verdict, the verdict must be upheld if any of the possible bases of conviction is supported by sufficient evidence. Griffin v. United States, 502 U.S. 46, 59–60 (1991).

Here, we conclude that sufficient evidence supported McDill's convictions on the grounds that he intimidated Hudson and Lipp. McDill argues that the district court erroneously failed to require the government to prove that he had specific intent to intimidate, threaten, or interfere with Hudson and Lipp. See Elonis v. United States, 135 S. Ct. 2001 (2015). We do not agree with the dissent that "Elonis is inapposite." Infra, at 14. There is a serious issue whether an agency operating under a broad delegation of authority to make rules and regulations "for the protection [of] public forests and national forests," including rules punishable by criminal fines when violated, 16 U.S.C. § 551, may adopt a rule punishing threats and intimidation without a *mens rea* element that may be "necessary to separate wrongful conduct from otherwise innocent conduct." Id. at 2010 (quotation omitted). But we need not resolve this issue, because even if proof of scienter is required for a conviction under each subpart of 36 C.F.R. § 261.3(c), we conclude there was sufficient evidence for the court to conclude that McDill intended to intimidate Hudson and Lipp. See Parker v. Norris, 64 F.3d 1178, 1181-82 (8th Cir. 1995) (holding that retrial is permitted after a conviction is reversed unless the reversal was based on insufficient evidence). Because McDill was convicted of a crime for which he was not charged, and the conviction was supported by sufficient evidence, we reverse the judgment of the district court and remand for further proceedings. See Farr, 536 F.3d at 1188-89.

### III. Conclusion

The judgment of the district court is reversed.

COLLOTON, Circuit Judge, dissenting.

The court takes the extraordinary step of reversing Thomas McDill's convictions based on a claim that McDill has never raised—not before the magistrate judge who tried his case, before the district judge who reviewed the convictions in a first appeal, or before this court on a second appeal, either in his opening brief, his

supplemental brief filed by counsel, or at oral argument. Ordinarily, when a defendant raises an issue that was forfeited in the trial court, the defendant bears the burden to show an obvious error that affected his substantial rights and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 736-37 (1993). The majority, having assumed the role of advocate for the defense, fails to carry its burden here.

The majority's theory is that the magistrate judge violated McDill's constitutional rights by effecting a "constructive amendment" of the charges against him. The magistrate judge found him guilty of threatening, intimidating, or interfering with Forest officers, but the majority insists that McDill was informed only that he was accused of "interfering" with the officers.

The problem of "constructive amendment" derives from the decisions in *Ex Parte Bain*, 121 U.S. 1 (1887), and *Stirone v. United States*, 361 U.S. 212 (1960). In those cases, the Court established that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone*, 361 U.S. at 215-16. The Fifth Amendment provides, with a couple exceptions, that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury." If an indictment is broadened without action by a grand jury, then the action would place "the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney." *Stirone*, 361 U.S. at 216 (quotation omitted)

The Fifth Amendment is inapplicable here. McDill was charged with petty offenses. The trial of a petty offense may proceed on a citation or violation notice. Fed. R. Crim. P. 58(b). McDill had no right to an indictment, and decisions concerning constructive amendment of an indictment are not germane. The majority's effort to apply *United States v. Novak*, 217 F.3d 566, 574 (8th Cir. 2000),

-10-

with an altered quotation that omits *Novak*'s reference to the grand jury, is misleading and unpersuasive.[2]

The Sixth Amendment's notice requirement does apply to petty offenses, so McDill enjoyed the right "to be informed of the nature and cause of the accusation" against him. It has long been recognized, however, that informing an accused in the terms of a statute, without setting forth any particulars of the manner or means, is generally sufficient to satisfy this constitutional provision. *Armour Packing Co. v. United States*, 209 U.S. 56, 84 (1908); *Ledbetter v. United States*, 170 U.S. 606, 612 (1898); *United States v. Gooding*, 25 U.S. 460, 474 (1827); *Taran v. United States*, 88 F.2d 54, 56-57 (8th Cir. 1937). The government charged McDill with petty offenses in two handwritten violation notices. In the box for "Offense Charged," both notices stated "36 CFR 261.3(c)." That provision, which is readily available on the Internet, states that the following is prohibited: "Threatening, intimidating, or intentionally interfering with any Forest officer . . . while engaged in, or on account of, the performance of duties for the protection, improvement, or administration of the National Forest System or other duties assigned by the Forest Service." 36 C.F.R. § 261.3(c) (2013). McDill was thus informed of the elements of the charges by reference to the regulation. In her ruling, the magistrate judge found beyond a reasonable doubt that McDill was guilty of intimidating, interfering with, or threatening officers of the Forest Service. The finding matched the offense charged. McDill was properly informed of the nature and cause of the accusation.

In accordance with Federal Rule of Criminal Procedure 58(b)(2), McDill also made an initial appearance on the petty offenses, at which time the magistrate judge

---

[2]*Novak*, quoted selectively by the majority, *ante*, at 5, states that a constructive amendment "occurs when the essential elements of the offense *set forth in the indictment* are [altered, either actually or in effect,] by the prosecutor or the court *after the grand jury has passed upon them*." 217 F.3d at 574 (emphasis added; brackets in original; internal quotation omitted).

was required to inform him of the charges. McDill produced no evidence to suggest that the magistrate judge did not inform him that he was charged, in the terms of the regulation, with threatening, intimidating, or intentionally interfering with any Forest officer. When the magistrate judge was asked during trial to explain the focus of the proceedings, she gave that precise information to McDill: "The focus of the proceedings are whether you threatened, intimidated, or intentionally interfered with the forest officer while they were engaged in the performance of their duties or on account of the officer's duties."

The majority attempts to manufacture an error based on a separate portion of the violation notices. As noted, both notices informed McDill that the "Offense Charged" was 36 C.F.R. § 261.3(c). The notices also each include a box entitled "Offense Description" that bears an officer's handwriting. One notice says "Intentionally Interfering w USFS Employee in Process of Her Duties"; the other states "Harassment & Interference w/ USFS Employee in Process of Her Duties." From these notices, the majority concludes summarily that "the citations charged McDill with harassment (which is not prohibited by § 261.3(c)) and interference." *Ante*, at 6. The majority then apparently deems it obvious that McDill was not informed that he was charged with "intimidating" a Forest officer.

The majority's own analysis, however, betrays its weakness. That one citation described the offense as "harassment"—a term not used in the regulation—shows that the "Offense Description" is not a statement of the charge against McDill. The statement of the charge, fittingly, appears in the box entitled "Offense Charged." The offense charged was threatening, intimidating, or intentionally interfering with a Forest officer, as set forth in 36 C.F.R. § 261.3(c). The "Offense Description" provides a brief statement of facts, sometimes called the manner or means, by which the cited party committed the charged offense. The officer's "Offense Description" does not obviously narrow the "Offense Charged" on either notice. Harassment or interference of a certain degree can amount to intimidation. The magistrate judge

reiterated during trial that McDill was charged according to the elements of the regulation, and McDill has not shown that he was otherwise informed at his initial appearance. At a minimum, there is no plain and obvious violation of the Sixth Amendment.

The majority's argument fails at the next step of plain-error analysis too. To justify relief, McDill (or here, the majority) must show that there is a reasonable probability that the alleged error affected the outcome of the trial. This was a straightforward trial of two petty offenses. The magistrate judge reminded McDill early in the trial, during the testimony of the second of nine witnesses, that "[w]hat I want to know is did you threaten, intimidate, or intentionally interfere with a Forest Service officer." McDill cross-examined the prosecution witnesses about his interactions with them and testified in his own defense. He had ample opportunity to elicit evidence that he did not intimidate the officers and no reason to forego presenting any such evidence. There is no reasonable probability that a different "Offense Description" on the citations would have changed the outcome of the trial.

There is yet another problem with the majority's approach under the fourth prong of plain error review. The plain-error rule is permissive, not mandatory, and it should be employed to avoid miscarriages of justice. *See Olano*, 507 U.S. at 735-36; Fed. R. Crim. P. 52(b). Although the majority hypothesizes that McDill was "unfairly surprised" when the prosecution argued that he "intimidated" the Forest officers, McDill has never once made that claim. If McDill does not realize that he was surprised, then leaving his convictions in place would not seriously affect the fairness, integrity, or public reputation of judicial proceedings. To the contrary, as we said in *United States v. Kent*, 531 F.3d 642 (8th Cir. 2008), to vacate a conviction under these circumstances "would blur the line between an adversarial and inquisitorial system of justice," and "would adversely affect the integrity and public reputation of the proceedings." *Id*. at 656-57 (internal quotation omitted). There is no plain error warranting discretionary relief.

-13-

McDill does raise a different claim on appeal, but it lacks merit. McDill argues that there was insufficient evidence to support the convictions for intimidating Forest officers because he did not *intend* to intimidate them. Citing *Elonis v. United States*, 135 S. Ct. 2001 (2015), McDill contends that the court should read into 36 C.F.R. § 261.3(c) a *mens rea* requirement that an offender must intend to threaten, intimidate, or interfere with a Forest officer.

*Elonis* is inapposite. That decision concerns how to interpret a text that is *silent* on the mental state required for a criminal offense: "When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Elonis*, 135 S. Ct. at 2010 (internal quotations omitted). The regulations at issue here are not silent on the required mental state. The Forest Service regulations are explicit that "[u]nless an offense set out in this part specifies that intent is required, *intent is not an element of any offense under this part*." 36 C.F.R. § 261.1(c) (emphasis added). Section 261.3(c) does not specify that intent to intimidate is required, so intent is not an element of McDill's offenses. Under § 261.3(c), intimidation is determined by an objective standard. *See United States v. Hoff*, 22 F.3d 222, 223 (9th Cir. 1994) (per curiam). We have explained in connection with another offense that "intimidation" is conduct reasonably calculated to put another in fear, as measured by an ordinary, reasonable person standard. *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003).

The majority asserts, *ante*, at 9, that *Elonis* is not inapposite, because "there is a serious issue" whether the Forest Service was permitted to adopt a rule punishing threats and intimidation without a *mens rea* element. It bears repeating, however, that the opinion in *Elonis*, including the very sentence quoted by the majority, addresses only texts that are "*silent* on the required mental state." 135 S. Ct. at 2010 (emphasis added). *Elonis* says nothing about courts imposing a *mens rea* requirement that lawmakers expressly declined to include. The Court elsewhere has established that

-14-

lawmakers need not make scienter an element of every offense. *Lambert v. California*, 355 U.S. 225, 228 (1957) ("We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition.") (citation omitted); *Williams v. North Carolina*, 325 U.S. 226, 238 (1945) ("The objection that punishment of a person for an act as a crime when ignorant of the facts making it so, involves a denial of due process of law has more than once been overruled."); *United States v. Balint*, 258 U.S. 250, 251-52 (1922) ("While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, . . . there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court."); *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 70 (1910) ("[P]ublic policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril, and will not be heard to plead in defense good faith or ignorance."). And McDill has never disputed that the Forest Service permissibly promulgated § 261.3(c) based on a delegation of authority under 16 U.S.C. § 551. *See generally Loving v. United States*, 517 U.S. 748, 768 (1996); *United States v. Grimaud*, 220 U.S. 506, 518 (1911); *United States v. Brown*, 364 F.3d 1266, 1276 (11th Cir. 2004).

Insofar as McDill argues on appeal that there was insufficient evidence that he intimidated the Forest Service officers under an objective standard, the district court correctly rejected the contention. There was ample evidence in the testimony of Forest officers Hudson and Lipp to support the magistrate judge's finding that McDill's conduct was objectively intimidating. As the district court put it, the evidence supported a reasonable finding that "McDill's conduct went beyond

frustration and criticism of the Forest Service Personnel into the realm of criminal conduct expressly prohibited by § 261.3(c)." I would therefore affirm the judgment.[3]

––––––––––––––––––––––––––

[3]McDill argues for the first time on appeal that § 261.3(c) is unconstitutionally vague and overbroad. The Ninth Circuit has rejected an analogous contention, *United States v. Murphy-Ellis*, 47 F. App'x 488, 489 (9th Cir. 2002), and the magistrate judge did not plainly err by declining to declare the regulation unconstitutional *sua sponte*.